Erica TYNE, individually and on behalf of Frank William TYNE, Jr.; Billie–Jo Francis Tyne, individually and on behalf of Frank William Tyne, Jr.; and Jodi Tyne, Plaintiffs,

v.

TIME WARNER ENTERTAINMENT COMPANY, L.P., d/b/a: Warner Bros. Pictures; Baltimore/Spring Creek Pictures, L.L.C.; and Radiant Productions, Inc., Defendants.

No. 6:00–cv–1115–Orl–22JGG.

United States District Court,
M.D. Florida,
Orlando Division.

May 9, 2002.

Stephen J. Calvacca, Stephen J. Calvacca, P.A., Orlando, FL, W. Edward McLeod, Jr., W. Edward McLeod, PA, Winter Park, FL, for plaintiffs.

Steven L. Brannock, Gregg Darrow Thomas, Rachel E. Fugate, Holland & Knight, LLP, Tampa, FL, Robert C. Vanderet, O'Melveny & Myers, LLP, Los Angeles, CA, for defendants.

### ORDER

CONWAY, District Judge.

This cause comes before the Court for consideration of Defendants' Dispositive Motion for Summary Judgment (Doc. 76), filed January 28, 2002.

### I. FACTS

This is an action for unauthorized commercial misappropriation and invasion of privacy against Defendants, Time Warner Entertainment Co., L.P., d/b/a Warner Bros. Pictures ("Warner Bros."), Baltimore/Spring Creek Pictures, L.L.C., and Radiant Productions, Inc. Plaintiffs, Erica Tyne and Billie–Jo Francis Tyne, are the surviving children of Decedent, Frank William "Billy" Tyne, Jr., the captain of the commercial fishing vessel, the *Andrea Gail.* Plaintiff, Jodi Tyne, is the former spouse of Decedent Tyne. Plaintiff, Dale R. Murphy, Jr., is the surviving child of Decedent, Dale R. Murphy, a crewman aboard the *Andrea Gail.* Plaintiff, Debra Tigue, is the former spouse of Decedent Murphy. Plaintiff, Douglas Kosco, is a former crewmember of the *Andrea Gail.*

In October 1991, the *Andrea Gail* was caught in a severe storm, and lost at sea. All of the crewmembers aboard the vessel, including Tyne and Murphy, were presumed dead. Due to interest in the unusual meteorological forces that caused the storm, the loss of the *Andrea Gail* became the subject of news stories and a best-selling book, *The Perfect Storm,* by Sebastian Junger. In June 2000, Warner Bros. released *The Perfect Storm* ("the Picture"), a motion picture based on the book and the events that occurred during the "storm of the century."

On August 24, 2000, Plaintiffs filed the instant action asserting claims for: (1) unauthorized commercial appropriation of decedents' likenesses, in violation of Florida Statute § 540.08; (2) unauthorized commercial appropriation of Plaintiffs' likenesses, also in violation of § 540.08; (3) common law invasion of privacy—false light; and (4) common law invasion of privacy based on disclosure of private facts. Defendants now move for summary judgment, on the grounds that there are no genuine issues of material fact to be resolved by a jury.

### II. STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the records 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United American Bank of Cent. Fla.,* 83 F.3d 1347, 1349 (11th Cir.1996) (quoting *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1396, *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995)). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen,* 83 F.3d

at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir.1993), *reh'g and reh'g en banc denied,* 16 F.3d 1233 (11th Cir.1994).

## III. DISCUSSION

### A. Section 540.08 Claims

In Counts One and Eight of the complaint, Plaintiffs allege that, by using the names and likenesses of Decedents Tyne and Murphy in *The Perfect Storm* without consent, Defendants violated Fla.Stat. § 540.08. In Counts Two, Three, Four, Nine, Ten, and Thirteen, Plaintiffs assert claims pursuant § 540.08, based on the Picture's use of their *own* likenesses without consent. Because the same analysis applies to the claims pertaining to the use of the Plaintiffs' and decedents' likenesses, the Court will address all the claims together.

Florida Statute Section 540.05 states in relevant part:

(1) No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:

(a) Such person; or

(b) Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness; or

(c) If such person is deceased, any person, firm or corporation authorized in writing to license the commercial use of her or his name or likeness, or if no person, firm or corporation is so authorized, then by any one from among a class composed of her or his surviving spouse and surviving children.

(2) In the event the consent required in subsection (1) is not obtained, the person whose name, portrait, photograph, or other likeness is so used, or any person, firm, or corporation authorized by such person in writing to license the commercial use of her or his name or likeness, or, if the person whose likeness is used is deceased, any person, firm, or corporation having the right to give such consent, as provided herein above, may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.

(3) The provisions of this section shall not apply to:

(a) The publication, printing, display, or use of the name or likeness of any person in any newspaper, magazine, book, news broadcast or telecast, or other news medium or publication as part of any bona fide news report or presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes;

Defendants concede that they did not obtain authorization to include characters based on Plaintiffs and the decedents prior to the production of *The Perfect Storm.* However, they argue that they did not violate § 540.08 by failing to obtain such authorization, because *The Perfect Storm* is an expressive work that has no commercial advertising purpose, and is, therefore, outside the scope of the rights protected by § 540.08. Plaintiffs contend, however, that the marketing and distribution of *The Perfect Storm* constitutes a "commercial purpose" for the purposes of § 540.08. Plaintiffs appear to acknowledge that pub-

lications protected by the First Amendment are not subject to liability under § 540.08, but nevertheless contend that the Picture is not subject to First Amendment protection because the film contains substantial and material falsity.

Defendants concede that the Picture, initially released in United States theatres in June 2000, has since been released to theatres in numerous foreign countries. The Picture has also been released and sold in VHS and DVD formats, in addition to being shown on cable and pay-per-view television. The Picture has grossed more than $150 million. Additionally, Warner Bros. sold promotional items relating to the Picture, such as t-shirts and posters. However, none of the promotional items featured the likenesses of Tyne, Murphy, or any of the Plaintiffs.

Despite Plaintiffs' protestations to the contrary, the Court believes that this case is squarely on point with the case of *Loft v. Fuller*, 408 So.2d 619 (Fla. 4th DCA1981). In that case, decedent Robert Loft was a commercial pilot who died in the crash of Eastern Airlines Flight 401. In the weeks and months following the crash, there were reported sightings of apparitions of Flight 401 crew members, including Loft. These reports were extensively covered by the news media. In 1976, John Fuller wrote a non-fiction book about the crash, "The Ghost of Flight 401," which was later made into a motion picture. Loft's family filed an action for invasion of privacy and unauthorized publication of Loft's name and likeness, based on the movie's depiction of Loft as a "reappearing ghost."

In dismissing the counts of the complaint alleging a violation of § 540.08, the trial court stated, "Florida Statute 540.08 applies only to actions in which a person's name or likeness is used for commercial trade or advertising purposes. The use of the decedent's name in the publication of 'The Ghost of Flight 401,' and the use of

his name in the subsequent movie do not constitute commercial trade or advertising as those terms have been interpreted in other jurisdictions." *Id.* at 621. The Fourth District Court of Appeal, in affirming the trial court, held:

> In our view, Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher. Thus, the publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else. Such is not the case here. While we agree that at least one of the purposes of the author and publisher in releasing the publication in question was to make money through sales of copies of the book and that such a publication is commercial in that sense, this in no way distinguished this book from almost all other books, magazines or newspapers and simply does not amount to the kind of commercial exploitation prohibited by the statute.

*Id.*, 408 So.2d at 622–23.

The court's statement makes it clear that merely using an individual's name or likeness in a publication is not actionable under § 540.08. A motion picture is not, therefore, in and of itself, a "commercial purpose." Furthermore, the promotion and advertising of the picture also do not constitute a commercial purpose. Section 47 of the *Restatement (Third) of Unfair Competition* defines "the purposes of trade" as:

> · The name, likeness, and other indicia of a person's identity are used "for the purposes of trade" under the rule stated in § 46 if they are used in advertising the user's goods or services, or are

placed on merchandise marketed by the user, or are used in connection with services rendered by the user. However, use "for the purposes of trade" does not ordinarily include the use of a person's identity in news reporting, commentary, *entertainment, works of fiction or non-fiction, or in advertising that is incidental to such uses.*

(emphasis added). Furthermore, comment c to § 47 states that "[u]se of another's identity in a novel, play, or motion picture is also not ordinarily an infringement ... However, if the name or likeness is used solely to attract attention to a work that is not related to the identified person, the user may be subject to liability ..."

■ In the instant case, Plaintiffs have failed to raise a genuine issue of material fact as to whether the use of decedents' likenesses and their own likenesses were used for the purposes of trade or a commercial purpose. Plaintiffs have presented no evidence showing that their names and likenesses were used "to directly promote" *The Perfect Storm. See Loft,* 408 So.2d at 622. In the absence of such evidence, Plaintiffs have no cause of action under § 540.08

■ Having determined that their names and likenesses were not used for trade, commercial, or advertising purposes, the Court need not extensively address the issue of whether the Picture falls within the § 540.08(3) exception for publications "having a current and legitimate public interest," and are subject to First Amendment protection. However, the Court notes the following statement of the United States Supreme Court:

> It is urged that motion pictures do not fall within the First Amendment's aegis because their production, distribution, and exhibition is a large-scale business conducted for private profit. We cannot agree. That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment. We fail to see why operation for profit should have any different effect in the case of motion pictures.
>
> ... For the foregoing reasons, we conclude that expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments.

*Joseph Burstyn v. Wilson,* 343 U.S. 495, 501–02, 72 S.Ct. 777, 780–81, 96 L.Ed. 1098 (1952). It is thus clear that the Picture is entitled to First Amendment protection, and would therefore, be excepted from liability under § 540.08. This provides another basis for the Court's conclusion that Defendants are entitled to summary judgment on these claims.

Finally, the Court addresses Plaintiffs' argument that Defendants are liable under § 540.08 because the Picture contains fictionalized elements even though it purports to be "a true story." This argument has no merit. No Florida court has interpreted § 540.08 to include an element of falsity.[1] It is therefore immaterial whether *The Perfect Storm* claims to be a work of fiction or nonfiction. Plaintiffs' arguments regarding the alleged fictionalization of the Picture suggest that they have confused the statutory action of unauthorized publication with the common law action of false light invasion of privacy. The Court, however, has no such problem distinguishing those two causes of action. Consequently, the Court determines that the truth or

---

1. Apparently realizing that the weight of Florida authority is against them, Plaintiffs encourage the Court to interpret § 540.08 in accordance with New York law. The Court sees no reason to rely on New York law, given that Florida law on the subject of unauthorized publication is well-settled and unambiguous.

falsity of the events depicted in the Picture is of no import to the issue of whether there was unauthorized publication of the Plaintiffs' and decedents' likenesses.

Because Plaintiffs' have failed to establish the existence of a genuine issue of material fact as to whether Defendants used the decedents' and their own names and likenesses for commercial purposes without authorization, summary judgment must be granted with respect to all claims brought pursuant to § 540.08.

### B. False Light Invasion of Privacy

In Counts Five and Six, Erica and Billie–Jo Tyne assert false light invasion of privacy claims against Defendants, arguing that the depiction of their father placed him in a false light.

■ Plaintiffs do not have standing to bring an action for false light invasion of privacy on their father's behalf. It is well-settled that:

> a cause of action for invasion of the common law right of privacy is strictly personal and may be asserted only by the person who is the subject of the challenged publication. Relatives of a deceased person have no right of action for invasion of privacy of the deceased person regardless of how close such personal relationship was with the deceased.

*Loft*, 408 So.2d at 621. The only recognized exception to this rule occurs when "plaintiffs experience an independent violation of their own personal privacy rights other than the violation alleged to have occurred indirectly by virtue of the publicity given to the deceased." *Williams v. City of Minneola*, 575 So.2d 683, 689 (Fla. 5th DCA 1991).

■ Plaintiffs argue that they "have experienced an independent violation of their own personal privacy rights by having been individually depicted in the Picture." Doc. 103 at 28. However, the Court does not believe that Plaintiffs have established

that there is a genuine issue of material fact on this issue. It is true that both Erica and Billie–Jo Tyne are portrayed in the Picture. However, neither actress portraying Erica or Billie–Jo speaks any lines at any point during the film. In the film, the actresses are shown in a photograph in the wheelhouse of the *Andrea Gail;* both Erica and Billie–Jo admitted in requests for admissions that their father kept such a photograph in the wheelhouse of the vessel. The Picture also includes a scene depicting Erica and Billie–Jo attending their father's memorial service. Both Erica and Billie–Jo admit that they attended the memorial service. Thus, the Picture cannot be said to have portrayed Erica and Billie–Jo in a false light, because they have admitted to the factual accuracy of the scenes depicting them. The Picture's portrayal of the Tyne daughters is not sufficiently egregious in nature to establish a claim of invasion of privacy against Defendants. Indeed, it is telling that Plaintiffs never asserted such a claim in their complaint.

Because Erica and Billie–Jo Tyne have presented no evidence showing that there is a genuine issue of material fact establishing an independent violation of their *own* privacy rights, they cannot maintain a cause of action based on the invasion of their father's privacy. Consequently, Defendants are entitled to summary judgment on Counts Five and Six.

### C. Invasion of Privacy—Public Disclosure of Private Facts

In Counts Eleven and Twelve, Plaintiffs Debra Tigue and Dale R. Murphy, Jr. assert claims for invasion of privacy based on public disclosure of private facts. The complaint alleges that *The Perfect Storm* falsely portrays Tigue and Murphy, Jr. as living in Massachusetts. In their memorandum in opposition to the motion for summary judgment, Plaintiffs further contend that "[t]he depiction in the Picture of De-

bra Tigue as being intimately involved with another man who is about to supplant the role of decedent Murphy in the lives of both Debra Tipe and Dale R. Murphy, Jr. is likewise entirely fabricated and has been advanced by Warner, as alleged in the Complaint, in knowing or reckless disregard of the truth." Doc. 103 at 29.

The Florida Supreme Court has adopted the *Restatement (Second) of Torts*' definition of the tort of invasion of privacy by public disclosure of private facts. That definition includes the following elements: "(1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern." *Cape Publications, Inc. v. Hitchner*, 549 So.2d 1374, 1377 (Fla.1989); *Restatement (Second) of Torts*, § 652D. In response to the motion for summary judgment, Plaintiffs primarily argue that the details of Tigue and Murphy, Jr.'s lives, as depicted in the Picture, are of no concern to the public. The Court need not address this issue, however, because it is clear that the Picture did not disclose private facts about Tigue and Murphy, Jr.

The *Restatement (Second) of Torts* has recognized that an essential element of the tort of public disclosure of private facts is that the facts at issue be true. *See Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 895 (9th Cir.1988); *Restatement (Second) of Torts*, Special Note to § 652D. However, Plaintiffs argue that the Picture's entire depiction of Tigue and Murphy, Jr. is fabricated and false. Because none of the facts disclosed by the picture are alleged to be true, Plaintiffs have no cause of action for invasion of privacy based on public disclosure of private facts. In a situation where the "facts" disclosed in a publication are, in actuality, false, "the interest invaded is that protected by the defamation and false-light torts: the interest in being represented truthfully to the world." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1230 (7th Cir.1993). However,

because Tigue and Murphy, Jr. did not assert claims for defamation or false light invasion of privacy, they do not have a valid cause of action, and Defendants are entitled to summary judgment on their claims.

## IV.  CONCLUSION

After careful review of the parties' legal memoranda, supporting affidavits, and exhibits, the Court concludes that Defendants are entitled to summary judgment on all counts of the action. Accordingly, it is **ORDERED** as follows:

1. Defendants' Dispositive Motion for Summary Judgment (Doc. 76), filed January 28, 2002, is **GRANTED.**

2. All pending motions are **DENIED as moot.**

3. The Clerk shall enter a final judgment in this case, providing that Plaintiffs shall take nothing on their claims against the Defendants, and that the Defendants shall recover their costs of action.

4. This case shall be removed from the June 2002 trial calendar.

5. The Clerk shall close this case.