408 So.2d 619 (1981)
Dorothy R. LOFT, Etc., et al., Appellants,
v.
John G. FULLER, et al., Appellees.
Nos. 79-1031, 79-1901.
District Court of Appeal of Florida, Fourth District.
December 16, 1981.
Rehearing Denied February 4, 1982.
*620 Richard A. Barnett of Law Office of Krupnick & Campbell, P.A., Fort Lauderdale, for appellants.
Larry S. Stewart and Gary D. Fox of Floyd, Pearson, Stewart, Richman, Greer & Weil, P.A., Miami, and Harriet F. Pilpel and Charles D. Bock of Greenbaum, Wolff & Ernst, New York, for appellees.
ANSTEAD, Judge.
This is an appeal by Dorothy R. Loft and her two children, Kimberly and Robert, Jr., from an order dismissing with prejudice their second and third amended complaints which sought injunctive relief and damages against the appellees for the alleged unauthorized publication of the name and likeness of the Lofts' deceased husband and father Robert A. Loft; for invasion of privacy incidental to the publication; and for the intentional infliction of emotional distress; all alleged to have resulted from reference to Robert Loft as a "reappearing ghost" as described in a book entitled The Ghost of Flight 401 and a movie based on the book.
On December 29, 1972, Eastern Airlines Flight 401 crashed while enroute from New York to Miami, Florida. Robert Loft, the captain of Flight 401, was killed. The crash was followed by reports of the appearance of apparitions of Flight 401 crew members, including Captain Loft, on subsequent flights. These reports received extensive publicity by the news media.
Subsequent to these press stories, The Ghost of Flight 401 was published in 1976. The book, a non-fictionalized account by the author, John Fuller, of his investigation of the reports, reported that the ghost of Captain Robert Loft, and other members of the flight crew, had reappeared to other Eastern flight crews and members of the general public on subsequent Eastern Air Line *621 flights. In this action, the appellants, who themselves are not alleged to have been mentioned in the book, complain about the attention the book has attracted to them as the surviving relatives of Captain Loft.
In dismissing the counts purporting to allege a violation of Section 540.08, Florida Statutes (1977) and a common law invasion of privacy, as set forth in the appellants' second amended complaint, the trial court elucidated the basis for its holding:
3. Counts II, IV and V of the Second Amended Complaint purport to allege common law invasion of privacy. A cause of action for invasion of the common law right of privacy is strictly personal and may be asserted only by the person who is the subject of the challenged publication. Relatives of a deceased person have no right of action for invasion of privacy of the deceased person regardless of how close such personal relationship was with the deceased. Cordell v. Detective Publications, Inc., 419 F.2d 989 (6th Cir.1969); Fletcher v. Florida Publishing Co., 40 Fla. Supp. 1 (Cir.C. 1974), affirmed in material part, 319 So.2d 100 (1st DCA 1975), rev'd on other points, 340 So.2d 914 (1976), cert. denied, 431 U.S. 930 [97 S.Ct. 2634, 53 L.Ed.2d 245]; and Santiesteban v. Goodyear Tire & Rubber Co., 306 F.2d 590 (5th Cir.1962) [applying Florida law]. Accordingly, as to Counts II, IV and V of the Second Amended Complaint, the various defendants' motions to dismiss be and the same hereby are granted with prejudice.
4. Counts I, III and V of the Second Amended Complaint purport to allege a violation of Florida Statute 540.08. That statute is part of Chapter 540 of the Florida Statutes dealing with Commercial Discrimination. Although there has been no case law in Florida interpreting Florida Statute 540.08 which would in any way be relevant to the cause of action asserted here, examination of the statute together with decided cases from other jurisdictions involving similar statutes make it clear to the Court that no cause of action exists under the facts alleged herein. Florida Statute 540.08 applies only to actions in which a person's name or likeness is used for commercial trade or advertising purposes. The use of the decedent's name in the publication of "The Ghost of Flight 401" and the use of his name in the subsequent movie do not constitute commercial trade or advertising as those terms are used in the statute or as those terms have been interpreted in other jurisdictions. Florida Statute 540.08 also contains an exception to its application in sub-section 3. There it is specifically provided that the statute does not apply in the case of any book which is published as part of a bona fide news report or presentation having a current and legitimate public interest. "The Ghost of Flight 401" is such a publication. Were the rule otherwise, it would have an unconstitutional "chilling" effect upon the First Amendment freedoms of speech and press. See e.g. Donahue v. Warner Bros. Pictures, 2 Utah 2d 256, 272 P.2d 177 (1954). Accordingly, the motions to dismiss directed to Counts I, III and V of the Second Amended Complaint be and the same hereby are granted with prejudice.
Appellants were thereafter given an opportunity to file a third amended complaint in an attempt to state a cause of action for intentional infliction of emotional distress. Acting upon a motion to dismiss, the trial court also held that this count failed to state a legal cause of action.
Appellants contend that a cause of action for intentional infliction of emotional distress accrued both because the portrayal of Captain Loft as a "ghost" in The Ghost of Flight 401 implied that they are the wife and children of a ghost; and because appellee Fuller, in preparing his book, secured the permission of the widow of another crew member[1] who died in the crash of Flight 401, but did not even attempt to secure such permission from the Loft family. *622 To find a cause of action we would have to conclude that these allegations constitute "conduct exceeding all bounds which could be tolerated, of a nature especially calculated to cause mental damage of a very serious kind." Slocum v. Food Fair Stores of Florida, 100 So.2d 396, 397 (Fla. 1958), quoting Prosser, Mental Suffering, 37 Mich.L.R. 889. Also see Chopin, "Emotional Distress Caused by Outrageous Conduct," The Florida Bar Journal Volume 54, Number 4, April 1980. We simply do not believe the allegations meet this test.
The other two claims are not as easy to decide. The Florida Supreme Court first recognized the tort of invasion of privacy in Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944), a recognition reconfirmed in Cason v. Baskin, 159 Fla. 31, 30 So.2d 635 (1947). Since then Florida decisions have filled out the contours of this tort right of privacy by accepting the following four general categories recognized by Prosser in his Law of Torts, p. 804-14 (4th Ed. 1971): (1) Intrusion, i.e., invading plaintiffs' physical solitude or seclusion; (2) Public Disclosure of Private Facts; (3) False Light in the Public Eye, i.e., a privacy theory analogous to the law of defamation; and (4) Appropriation, i.e., commercial exploitation of the property value of one's name.
Under the first three of the categories, the right of privacy has generally been considered personal in nature. The Restatement of Torts 2d provides that:
Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded.
Comment
a. The right protected by the action for invasion of privacy is a personal right, peculiar to the individual whose privacy is invaded. The cause of action is not assignable, and it cannot be maintained by other persons such as members of the individual's family, unless their own privacy is invaded along with his.
b. In the absence of statute, the action for invasion of privacy cannot be maintained after the death of the individual whose privacy is invaded. In a few states particular statutes permit the survival of an action for invasion of privacy that has occurred before death. In a smaller number of states there is statutory authorization for an action on the part of surviving relatives for invasion of privacy of one who is already deceased, with the invasion occurring after his death. Since appropriation of name and likeness is similar to impairment of a property right and involves an aspect of unjust enrichment of the defendants or his estate, survival rights may be held to exist following the death of either party.
Restatement of Torts, 2d, § 652 I (1977); see also W. Prosser, supra, at 815.
By enacting Section 540.08, the Florida Legislature has amplified the remedies available for the fourth form of invasion of privacy: commercial exploitation of the property value of a person's name or personality. Section 540.08 prohibits unauthorized publication of the name or likeness of any person, for trade, commercial or advertising purposes. If the person involved is deceased, consent for such publication must be secured from the surviving spouse and children. The statute specifically exempts from its proscription the publication of any matter having a current and legitimate public interest unless such publication amounts to a direct advertisement of the publisher's product. At issue is whether the name of Captain Loft was published in the Ghost of Flight 401 for a trade, commercial or advertising purpose as contemplated by the statute. Appellants claim the deceased's name was used for the "commercial" purpose of selling books by publicizing the reports of Captain Loft's reappearances as a ghost, and that hence the publication was in violation of Section 540.08 since appellants' permission was not secured. We cannot agree.
In our view, Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote *623 the product or service of the publisher. Thus, the publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else. Such is not the case here. While we agree that at least one of the purposes of the author and publisher in releasing the publication in question was to make money through sales of copies of the book and that such a publication is commercial in that sense, this in no way distinguishes this book from almost all other books, magazines or newspapers and simply does not amount to the kind of commercial exploitation prohibited by the statute. See e.g. Jenkins v. Dell Publishing Company, 251 F.2d 447 (3d Cir.1958); Cordell v. Detective Publications, Inc., 307 F. Supp. 1212 (E.D.Tenn. 1968), affd. 419 F.2d 989 (6th Cir.1978); Mahaffey v. Official Detective Stories, Inc., 210 F. Supp. 251 (W.D.La. 1962). We simply do not believe that the term "commercial," as employed in Section 540.08, was meant to be construed to bar the use of people's names in such a sweeping fashion. We also believe that acceptance of appellants' view of the statute would result in a substantial confrontation between this statute and the first amendment to the United States Constitution guaranteeing freedom of the press and of speech. See, e.g., Cordell v. Detective Publications, Inc., supra; Jenkins v. Dell Publishing Company, supra; Mahaffey v. Official Detective Stories, Inc., supra. Having concluded that the publication as alleged is not barred by Section 540.08, we need not decide if, under the allegations of the complaint, the book was of current and legitimate public interest, thus removing it entirely from the scope of the statute.
Appellants also seek relief under the other three forms of common law invasion of privacy. However, as indicated before, the majority view, as represented by the Restatement of Torts, is that the deceased's relatives may not maintain an action for invasion of privacy, either based on their own privacy interests or as a representative for the deceased where the alleged invasion was directed, as was the case here, primarily at the deceased.[2] The court in Justice v. Belo Broadcasting Corp., supra, footnote 2, explained why most jurisdictions have refused to recognize a claim by the surviving relatives:
Certain policies have been identified by the courts in support of the majority rule. First, the law is wary of actions for injury which is purely emotional; the danger of spurious claims is too great, see Cordell v. Detective Publications, Inc., 419 F.2d at 991. A major problem is also defining the boundaries of the cause of action brought by a person not referred to or named in the publication or broadcast. In Nelson v. Maine Times, 373 A.2d at 1221, the court stated:
Section 6521 is in accord with general decisional law which holds this tort to be purely personal. In the context of this particular tort courts, being wary of spurious claims or those purely emotional in character have refused to recognize such actions. Additionally, if actions for violating the right of privacy were allowed by other than the person directly involved, fixing their boundaries and parameters would become an almost impossible task. For example, within what degree of relationship, if any, must a prospective plaintiff be? Might not a very close friend have as serious or emotional reaction as a mother or father? The consensus seems to be that limiting the action to the person directly involved is *624 a sounder judicial policy. We agree. See Cordell v. Detective Publications, Inc., 419 F.2d 989 (6th Cir.1969); Kelley v. Post Publishing Co., 327 Mass. 275, 98 N.E.2d 286, 287 (1951).

Id. at 1225. Other courts have stated that the decision should be left to state legislatures, Maritote v. Desilu Productions, Inc., 345 F.2d at 420, and some states have provided for, by statute, a cause of action to be maintained by the relatives of a deceased who is referred to in a publication, see W. Prosser, supra, at 815. Finally, some courts have expressed concern over double recoveries, see Santiesteban v. Goodyear Tire & Rubber Co., 306 F.2d at 12, although that problem is not presented in this case.
Alternatively, an analogy can be made to defamation cases, see Gruschus v. Curtis Publishing Co., 342 F.2d at 776; Santiesteban v. Goodyear Tire & Rubber Co., 306 F.2d at 12. Under Texas law, the plaintiffs could not recover for libel or slander under the facts presented in this case. No cause of action for defamation could arise in favor of the parents who were not identified in any way in the news report made the subject of the complaint, see Gonzales v. Times Herald Printing Co., 513 S.W.2d 124 (Tex.Civ. App.  Dallas 1974, no writ); Keys v. Interstate Circuit, Inc., 468 S.W.2d 485 (Tex.Civ.App.  Tyler 1971, writ dism'd). A libel upon the memory of the deceased person that does not directly cast any personal reflection upon his relatives does not give them any right of action, see Renfro Drug Co. v. Lawson, 138 Tex. 434, 160 S.W.2d 246 (Tex.Comm.App. 1942, opinion adopted). The defamation cases are, however, not directly on point since defamation is concerned with the different interest of reputation.
There are cases which support the view that under certain circumstances the deceased's relatives may recover for the invasion of their own privacy interests even though they were not personally the focus of the publicity in question. For example, see Douglas v. Stokes, 149 Ky. 506, 149 S.W. 849 (Ky.App. 1912); Bazemore v. Savannah Hosp., 171 Ga. 257, 155 S.E. 194 (1930); Fitzsimmons v. Olinger Mortuary Ass'n, 91 Colo. 544, 17 P.2d 535 (1932); Varnish v. Best Medium Publishing Co., 405 F.2d 608 (2d Cir.1968), cert. denied 394 U.S. 987, 89 S.Ct. 1465, 22 L.Ed.2d 762 (1969); Cox Broadcasting Corp. v. Cohn, 231 Ga. 60, 200 S.E.2d 127 (Ga. 1973), reversed on other grounds, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). The rationale behind these decisions is that the relatives of the deceased have their own privacy interest in protecting their rights in the character and memory of the deceased as well as the right to recover for their own humiliation and wounded feelings caused by the publication. Some of these actions were also predicated on quasi-contractual grounds or on grounds similar to those which might constitute a cause of action for intentional infliction of emotional distress under Florida law.
We are wary of a blanket rule barring all relatives of a deceased from bringing a common law invasion of privacy action simply because the relatives were not directly involved in the publicity. However, in our view such relatives must shoulder a heavy burden in establishing a cause of action. When there are unusual circumstances, such as those that were involved in most of the cases which have recognized claims by the relatives, it may be that a defendant's conduct towards a decedent will be found to be sufficiently egregious to give rise to an independent cause of action in favor of members of decedent's immediate family. Absent the presence of such unusual circumstances, however, such actions will usually be barred for the reasons best expressed in the Justice case, quoted, supra.
In the case at hand we do not believe the appellants have stated a cause of action under any of the published decisions. It is not alleged that the publication contains any reference to appellants themselves. The appellants have not alleged any independent violation of their own personal privacy rights other than that alleged to have occurred indirectly by virtue of the publicity given to the deceased's alleged *625 reappearance. Further, appellees are not alleged to have invented, nor even having first published, the reports regarding Captain Loft's reappearance as a "ghost." They are not alleged to have made false or slanderous statements about the deceased; to have displayed grotesque pictures of the deceased's body; or to have been guilty of any conduct similar thereto. Although we have great sympathy for the plight of appellants in enduring both the death of their father and husband, and the bizarre rumors of his reappearance as a "ghost," we simply do not believe that these facts alone are of a sufficiently egregious nature to establish a claim of invasion of privacy against the appellees.
Accordingly, for these reasons, we affirm the orders of the lower court dismissing the amended complaints with prejudice.
HERSEY, J., concurs.
LETTS, C.J., concurs specially with opinion.
LETTS, Chief Judge, specially concurring.
I agree with the opinion in all respects except for its hesitancy on the question of whether surviving relatives have standing to bring a cause of action for invasion of privacy.
To me they should unequivocally have standing and while their burden is heavy, it should not be any heavier than the norm for an invasion of right of privacy action. The Florida Legislature would appear to agree with me, because Section 540.08(1)(c) has specifically granted standing to close relatives. It is true that the section of the Statute applies only to invasion of privacy by means of commercial exploitation, but it is not easy to make a distinction. I am convinced that the passage of this section indicates that the Legislature is receptive to the view that the standing issue should be expanded beyond the traditional common law concept limiting the right to a personal one.
NOTES
[1] The flight engineer's widow, unlike the appellants, was mentioned at length in the book and also cooperated with the author in performing certain experiments reported in the book.
[2] See e.g. Young v. That was the Week That Was, 423 F.2d 265 (6th Cir.1970); Maritote v. Desilu Productions, Inc., 345 F.2d 418 (7th Cir.), cert. denied 382 U.S. 883, 86 S.Ct. 176, 15 L.Ed.2d 124 (1965); Gruschus v. Curtis Publishing Co., 342 F.2d 775 (10th Cir.1965); Starrels v. Commissioner, 304 F.2d 574 (9th Cir.1962); Justice v. Belo Broadcasting Corporation, 472 F. Supp. 145 (N.D.Tex. 1979); Meeropol v. Nizer, 381 F. Supp. 29 (S.D.N.Y. 1974), aff'd 560 F.2d 1061 (2d Cir.1977); Nelson v. Maine Times, 373 A.2d 1221 (Me. 1977); Henrickson v. California Newspapers, Inc., 48 Cal. App.3d 59, 121 Cal. Rptr. 429 (1975); Cordell v. Detective Publications, Inc., supra; Santiesteban v. Goodyear Tire & Rubber Co., supra. See also Annot. 18 ALR 3d 873 (1968).