Patricia Ann VALENTINE,
Plaintiff-Appellant,

v.

C.B.S., INC. d/b/a Columbia Records, Bob Dylan, a/k/a Robert Zimmerman, Jacques Levy and Warner Bros. Publications, Inc., Defendants-Appellees.

No. 81–5924.

United States Court of Appeals,
Eleventh Circuit.

Feb. 14, 1983.

Markus & Winter, P.A., Sheldon I. Pivnik, Stuart A. Markus, Miami, Fla., for plaintiff-appellant.

Steel, Hector & Davis, P.A., William B. Killian, James B. Tilghman, Jr., Miami, Fla., Youngman, Hungate & Leopold, P.A., Louis P. Petrich, Los Angeles, Cal., for defendants-appellees.

Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

PER CURIAM:

Bob Dylan and Jacques Levy wrote a song in 1975 called "Hurricane" which gained some measure of popularity. The song depicted the murder trial of prizefighter Rubin "Hurricane" Carter and mentioned a witness, Patty Valentine. Miss Valentine brought suit for damages alleging common law defamation, invasion of privacy, and unauthorized publication of her name in violation of a Florida statute. The district court granted summary judgment for the defendants on the ground that the facts, about which there was no issue, did not support any of the theories of action. We affirm.

Plaintiff Valentine testified as a witness at the highly publicized 1967 trial of prizefighter Rubin "Hurricane" Carter and John Artis. Both were convicted of murder. Two other witnesses, Bradley and Bello, later recanted their eyewitness testimony, and a public outcry arose for a new trial. At the height of the controversy about the fairness of the 1967 trial, defendants Bob Dylan and Jacques Levy wrote "Hurricane." Defendant C.B.S. manufactured and distributed a recording of the song, and defendant Warner Bros. Publications published the sheet music.

The song portrays a perceived conspiracy between Bello, Bradley, and the police to unjustly convict Carter. Valentine contends that the defendants defamed her because the song implies she participated in the conspiracy and that defendants maliciously failed to verify the accuracy of the lyrics.

■ First, we seriously question that the song implies Valentine was a part of the conspiracy. Only three stanzas of the song name Patty Valentine and portray her role as a witness to some of the events occurring

the night of the murders.[1] One stanza says Bello and Bradley "baldly lied." Plaintiff pursues the following theory. Stanza four depicts her as agreeing with identification statements by Bello and Bradley. Stanza ten states Bello and Bradley lied. Construing the two stanzas together, it is argued, they imply plaintiff, by nodding her head, acquiesced in the lie of the other two witnesses. A review of the entire song makes it clear this interpretation is not reasonably possible. The stanzas actually referring to her all related events occurring the night of the murder. The song does not indicate the alleged conspiracy included Bello and Bradley at that point. The plaintiff's interpretation does not construe the words as the common mind would understand them but is tortured and extreme. *Diplomat Electric, Inc. v. Westinghouse Electric Supply Co.,* 378 F.2d 377, 381–82 (5th Cir.1967); *O'Neal v. Tribune Co.,* 176 So.2d 535, 548 (Fla.App.1965).

Second, the facts indicate there is no triable issue as to whether the defendants took reasonable precautions to ensure the song's accuracy, particularly in view of their beliefs that Valentine was not part of the conspiracy and that the song did not depict her as being so. Several individuals, including two attorneys, repeatedly reviewed the lyrics. The plaintiff offered nothing to rebut defendant Dylan's deposition testimony that he believed the song did not depict

Valentine as a participant in the alleged frame-up. All defendants shared this belief. Nothing in the record contradicts the district court's view in this regard.

Third, a review of the record indicates the plaintiff could not establish the statements were untrue. The record evidence indicates Valentine testified in the 1967 trial that she entered the murder scene from her upstairs room, saw several bodies, screamed aloud, observed a man standing by the door (later identified as Bello), returned to her room upstairs to call the police, and while doing so saw two men running to a car with out-of-state license plates. Cast against this testimony, it is obvious the lyrics are substantially and materially true, *see Hill v. Lakeland Ledger Publishing Corp.,* 231 So.2d 254 (Fla.App. 1970), and are not reasonably susceptible to a defamatory meaning. *Wolfson v. Kirk,* 273 So.2d 774 (Fla.App.1973), *cert. denied,* 279 So.2d 32 (Fla.1973). They indicate only that plaintiff saw the horrifying aftermath of a murder, called the police, and affirmed the description of the getaway car. The district court correctly entered summary judgment on the common law claim.

▮ As to the invasion of privacy claim, under Florida law the publication of facts regarding matters of legitimate public or general interest will not support an invasion of privacy action. *Cason v. Baskin,* 155

---

1. The three stanzas referring to plaintiff, with special notation of the four references to her, are herein set forth along with the pertinent parts of the stanza stating that Bello and Bradley lied:

   1. Pistol shots ring out in the barroom night
      Enter Patty Valentine from the upper hall
      She sees the bartender in a pool of blood
      Cries out, "My God, they killed them all!"
      Here comes the story of the Hurricane,
      The man the authorities came to blame
      For somethin' that he never done
      Put in a prison cell, but one time he could-a been the champion of the world.

   2. Three bodies lyin' there does Patty see
      And another man named Bello, movin' around mysteriously
      "I didn't do it", he says, and he throws up his hands
      "I was only robbin' the register, I hope you understand
      I saw them leavin," he says, and he stops
      "One of us had better call up the cops"
      And so Patty calls the cops
      And they arrive on the scene with their red lights flashin'

   In the hot New Jersey night
   * * *

   4. Alfred Bello had a partner and he had a rap for the cops
      Him and Arthur Dexter Bradley were just out prowlin' around
      He said, "I saw two men runnin' out, they looked like middleweights
      They jumped into a white car with out-of-state plates"
      And Miss Patty Valentine just nodded her head
      Cop said, "Wait a minute boys, this one's not dead"
      So they took him to the infirmary
      And though this man could hardly see
      They told him that he could identify the guilty men
      * * *

   10. (In part)
       Rubin Carter was falsely tried
       The crime was murder "one," guess who testified?
       Bello and Bradley and they both baldly lied.

   From the song, "Hurricane;" words by Bob Dylan and Jacques Levy, music by Bob Dylan.

Fla. 198, 215–16, 20 So.2d 243, 251 (1944). This is so even when a person is an involuntary participant in such matters. *Jacova v. Southern Radio & Television Co.,* 83 So.2d 34 (Fla.1955). The lyrics describe Valentine's role as a witness to a murder, clearly an event of legitimate public interest. Plaintiff stipulated that the 1967 trial, including her testimony, received national publicity. The events surrounding Carter's trial and recent retrial continue to be matters of legitimate public interest. The song discloses no private facts but merely details events Valentine previously disclosed through her public trial testimony. The trial court properly entered summary judgment for defendants on the invasion of privacy claims.

■ Valentine's statutory claim alleges a violation of Fla.Stat.Ann. § 540.08 (West 1972), which prohibits the unauthorized use of a person's name or likeness for commercial, trade, or advertising purposes. The use is actionable under the statute because of the way the defendants associate the individual's name or personality with something else. *Loft v. Fuller,* 408 So.2d 619 (Fla.App.1981) (construing § 540.08). The trial court properly held that, as a matter of law, the ballad "Hurricane" did not commercially exploit Valentine's name. The defendants did not use her name to directly promote a product or service. Use of a name is not harmful simply because it is included in a publication sold for profit. As the court correctly noted, an interpretation that the statute absolutely bars the use of an individual's name without consent for any purpose would raise grave questions as to constitutionality. The court properly construed the statute to avoid confronting the constitutional question. *United States v. Clark,* 445 U.S. 23, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980).

AFFIRMED.