[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 9, 2003
THOMAS  K. KAHN
CLERK

No. 02-13281

D. C. Docket No. 00-01115-CV-ORL-22C

ERICA TYNE, individually and on behalf of Frank
William "Billy" Tyne, Jr.,
BILLIE-JO FRANCIS TYNE, individually and on
behalf of Frank William "Billy" Tyne, Jr.,  ET AL.

Plaintiffs-Appellants,

versus

TIME WARNER ENTERTAINMENT COMPANY, L.P.,
d.b.a. Warner Bros. Picture,
BALTIMORE/SPRING CREEK PICTURES, L.L.C.,
a Delaware limited liability company, ET AL.

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

**(July 9, 2003)**

Before BARKETT, MARCUS and ALARCÓN[*], Circuit Judges.

PER CURIAM:

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Erica Tyne, Billie-Jo Francis Tyne, Dale R. Murphy, Jr.,[1] Debra Tigue, and Douglas Kosko, (collectively, the "Tyne Plaintiffs") appeal an adverse summary judgment granted to Time Warner Entertainment Co., d/b/a Warner Bros. Pictures, Baltimore/Spring Creek Pictures, and Radiant Productions (collectively, "Warner Bros.") on their action for unauthorized commercial misappropriation and invasion of privacy concerning the motion picture The Perfect Storm ("the Picture"). The Tyne Plaintiffs contend that the district court erred in finding that Florida's commercial misappropriation statute, see Fla. Stat. § 540.08 (1998), does not extend to this case. In addition, the Tyne children, alone, challenge the district court's grant of summary judgment to Warner Bros. on their claim that the Picture's portrayal of their father was so egregiously false and offensive as to allow them to bring a false light invasion of privacy claim, usually non-descendible, on their own behalf.

Because we are unsure of the proper reach of Fla. Stat. § 540.08 in this context, we certify this question to the Florida Supreme Court.

---

[1] The two Tyne children bring this appeal both in their individual capacities and on behalf of their deceased father, Frank William "Billy" Tyne, Jr. Similarly, Murphy appeals in his individual capacity and on behalf of his deceased father, Dale R. Murphy, Sr.

2

## I. BACKGROUND

In October, 1991, a rare confluence of meteorological events led to a "massively powerful" weather system off the New England Coast. The fishing vessel known as the <u>Andrea Gail</u> was caught in this storm and lost at sea. All six of the crewmembers on board the <u>Andrea Gail</u>, including Billy Tyne and Dale Murphy, Sr., were presumed to have been killed. Newspaper and television reports extensively chronicled the storm and its impact. Based on these reports, and personal interviews with meteorologists, local fishermen, and family members, Sebastian Junger penned a book, entitled <u>The Perfect Storm: A True Story of Men Against the Sea</u>, recounting the storm and the last voyage of the <u>Andrea Gail</u> and its crew. The book was published in 1997.

That same year, Warner Bros. purchased from Junger and his publisher the rights to produce a motion picture based on the book. Warner Bros. released the film, entitled <u>The Perfect Storm</u>, for public consumption in 2000. The Picture depicted the lives and deaths of Billy Tyne and Dale Murphy, Sr., who were main characters in the film. It also included brief portrayals of each individual that is a party to this appeal. Nonetheless, Warner Bros. neither sought permission from the individuals depicted in the picture nor compensated them in any manner.

Unlike the book, the Picture presented a concededly dramatized account of both the storm and the crew of the <u>Andrea Gail</u>. For example, the main protagonist in the Picture, Billy Tyne, was portrayed as a down-and-out swordboat captain who was obsessed with the next big catch. In one scene, the Picture relates an admittedly fabricated depiction of Tyne berating his crew for wanting to return to port in Gloucester, Massachusetts. Warner Bros. took additional liberties with the land-based interpersonal relationships between the crewmembers and their families.

While the Picture did not hold itself out as factually accurate, it did indicate at the beginning of the film that "THIS FILM IS BASED ON A TRUE STORY." A disclaimer inserted during the closing credits elaborated on this point with the following statement: "This film is based on actual historical events contained in 'The Perfect Storm' by Sebastian Junger. Dialogue and certain events and characters in the film were created for the purpose of fictionalization."

On August 24, 2000, the Tyne and Murphy children, along with Tigue and Kosko, filed suit against Warner Bros. seeking recompense under Florida's commercial misappropriation law and for common law false light invasion of privacy. In a May 9, 2002 Order, the district court granted Warner Bros.'s motion for summary judgment on all counts. The court found that (A) the term

4

"commercial purpose" in Fla. Stat. § 540.08's was not meant to extend the statute's reach to the use of an individual's name or likeness in an expressive medium, and (B) the Picture did not fall into the narrow "relational right of privacy" exception to the general rule that false light claims are non-descendible.

## II.  DISCUSSION

### A. Commercial Purpose

The Tyne Plaintiffs first allege error in the district court's determination that Loft v. Fuller, 408 So. 2d 619, 622 (Fla. Dist. Ct. App. 4th Dist. 1981), controls this case and precludes the application of § 540.08 to the facts herein.

Section 540.08 of the Florida Statutes prohibits the unauthorized use of a person's[2] name or likeness for "trade, commercial, or advertising purposes."  See Valentine v. C.B.S., Inc., 698 F.2d 430, 433 (11th Cir. 1983).  In pertinent part, the statute reads as follows:

> (1) No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:

---

[2] The statute also extends the right to sue under this prohibition to relatives of decedents.  See Fla. Stat. § 540.08(1)(C).

5

(a) Such person; or

(b) Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness; or

(c) If such person is deceased, any person, firm or corporation authorized in writing to license the commercial use of her or his name or likeness, or if no person, firm or corporation is so authorized, then by any one from among a class composed of her or his surviving spouse and surviving children.

(2) In the event the consent required in subsection (1) is not obtained, the person whose name, portrait, photograph, or other likeness is so used, or any person, firm, or corporation authorized by such person in writing to license the commercial use of her or his name or likeness, or, if the person whose likeness is used is deceased, any person, firm, or corporation having the right to give such consent, as provided hereinabove, may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.

(3) The provisions of this section shall not apply to:

(a) The publication, printing, display, or use of the name or likeness of any person in any newspaper, magazine, book, news broadcast or telecast, or other news medium or publication as part of any bona fide news report or presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes;

(b) The use of such name, portrait, photograph, or other likeness in connection with the resale or other distribution of literary, musical, or artistic productions or other articles of merchandise or property where such person has consented to the use of her or his name, portrait, photograph, or likeness on or in connection with the initial sale or distribution thereof.

Fla. Stat. § 540.08.

The issue before this Court is whether the Picture's admittedly unauthorized use of the Tyne Plaintiffs', and their relatives', names and likenesses was "for trade, commercial, or advertising purposes," as that phrase is used in § 540.08. Id. This is a similar issue to the one presented in Loft v. Fuller. See Loft, 408 So. 2d at 622. In that case, the family of decedent Robert Loft sued the author of a non-fiction book entitled The Ghost of Flight 401. Id. Mr. Loft had been the captain of Eastern Airlines Flight 401 en route from New York to Miami when it crashed into the Florida Everglades on December 28, 1972. Id. In addition to the extensive coverage that the crash itself received, in the succeeding months numerous media outlets reported that people on several subsequent Eastern Airlines flights claimed to have seen apparitions of Flight 401 crewmembers, including Mr. Loft. Id. In 1976, author John Fuller published Flight 401, a non-fiction account of both the crash and the reported poltergeists. A motion picture under the same title was released in 1978. Id. Both portrayed Mr. Loft as a ghost in accordance with the newspaper accounts. The Lofts argued that the unauthorized use of the decedent's name (in the book and movie) and likeness (in the movie) violated Fla. Stat. § 540.08. Id. The Loft court disagreed and affirmed the trial court's dismissal of the Lofts' complaint with prejudice.

7

In reaching its conclusion, the <u>Loft</u> court held that § 540.08 "is designed to prevent the unauthorized use of a name <u>to directly promote</u> the product or service of the publisher." <u>Id.</u> at 622-23 (emphasis supplied). The court found that the term "commercial," as employed in § 540.08, "was [not] meant to be construed to bar the use of people's names in [any] sweeping fashion." <u>Id.</u> at 623. Rather, § 540.08 protects individuals from the unauthorized use of their names or likenesses <u>solely in the context</u> of an advertisement or promotion. <u>See id.</u> Thus, the "publication [of a person's name or likeness] is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else." <u>Id.</u>

The Tyne Plaintiffs argue that <u>Loft</u> is distinguishable because, in that case, the depiction accorded with the newspaper reports of Loft's "reappearances" on other flights, thereby clearly entitling it to First Amendment protection. In this case, however, the Tyne Plaintiffs assert that the Picture's depiction of the events at sea, and the relationships between the crew members and their children, had never been reported in the press and were intentionally fabricated. Thus, they argue, the Picture's representations were "knowingly false" and, therefore, not protected by the First Amendment.

The Tyne Plaintiffs also point out that applying <u>Loft</u> to this case presents several problems with regard to § 540.08. First, § 540.08(1) employs the phrase "any commercial or advertising purpose." <u>See</u> Fla. Stat. § 540.08. The Tyne Plaintiffs note that if the statute covers only the promotion of a product or service, then the term "any commercial . . . purpose" is rendered surplusage; there would be no need to state both "advertising" and "commercial" if the two terms had precisely the same meaning. This reading, they observe, would run counter to the well-known principle that a statute should be read to give effect to each of its provisions and to avoid rendering any terms mere surplusage. <u>See Hawkins v. Ford Motor Co.</u>, 748 So. 2d 993, 1000 (Fla. 1999); <u>See Also Hechtman v. Nations Title Ins.</u>, 840 So. 2d 993, 996 (Fla. 2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.") (citation omitted).

The Tyne Plaintiffs also contend that if § 540.08 were read to solely prevent the unauthorized use of a name to directly promote the product or service of the publisher, it would conflict with language in the statute's two "exception" provisions. Specifically, § 540.08(3)(a) states that the statute does not apply to the use of a person's name or likeness in news or other media if the use implicates

9

public interest and is not for an advertising purpose. See Fla. Stat. § 540.08(3)(a). Phrased positively, § 540.08(3)(a) asserts that the statute continues to apply to (i.e. consent is required for) the use of a person's name or likeness in news or public interest settings that involve advertising. But if § 540.08(1) applies only to advertising or promotional purposes in all cases, then there would be no reason for § 540.08(3)(a) to limit the statute's applicability to uses that involve news media "for advertising purposes." Id. Subsection (3)(a)'s exemption provision would be unnecessary since all advertisements are covered by the main rule.

Similarly, there would be no need for the second, "artistic works," exemption. See § 540.08(3)(b). This provision states that § 540.08 does not apply to the use of a person's name or likeness to resell/redistribute artistic works if the individual consented to the initial sale/distribution of the product. But it makes little sense for § 540.08(3)(b) to exempt the resale of artistic works if § 540.08(1) applies solely to advertisements. Thus, a narrow interpretation of § 540.08(1) as covering only uses that directly promote a product or service would render this second exemption superfluous.

"Substantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court." Jones v. Dillard's, Inc., - - F.3d - - (11th Cir. 2003). Because we are uncertain as to

10

the scope of § 540.08 and the applicability of the Loft decision in the circumstances presented here, we certify the following question of law to the Supreme Court of Florida:

**To what extent does Section 540.08 of the Florida Statutes apply to the facts of this case?**

In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted herewith to the Florida Supreme Court.

## B.  "Relational" Right of Privacy[3]

Erica and Billie-Jo Tyne ("the Tynes"), separate and apart from the other Tyne Plaintiffs, contest the district court's grant of summary judgment to Warner Bros. on their claims that the Picture portrayed their father in a false light.  While conceding that false light invasion of privacy claims are generally non-descendible, the Tynes argue that the district court erred in failing to recognize their own, individual "relational" right of privacy.  This novel contention is premised upon the personal invasion of privacy that the Tynes themselves experienced when their father was publicized in a false light.  The Tyne daughters assert that the Picture falsely vilified their father as an "obsessed boat captain" and that this portrayal was "egregiously painful and injurious."

---

[3] We review de novo the district court's grant of summary judgment, applying the same legal standard as the district court.  See Royal Ins. Co. of Am. v. Whitaker Contr. Corp., 242 F.3d 1035, 1040 (11th Cir. 2001).

11

Because the Tynes assert their right to recover for a "relational" invasion of privacy under the common law of the State of Florida, that state's law controls our inquiry. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."). Florida's general rule is that relatives of a decedent may not maintain a cause of action for invasion of privacy "either based on their own privacy interests or as a representative for the deceased where the alleged invasion was directed, as was the case here, primarily at the deceased." Loft, 408 So. 2d at 623. While the Florida courts have expressly declined to foreclose all invasion of privacy actions brought by the relatives of a decedent, it is clear that such actions are heavily disfavored. See id. at 624 (stating that relatives "must shoulder a heavy burden in establishing [such] a cause of action.").

The sole exception to the general rule against the descendibility of false light claims "occurs when plaintiffs experience an independent violation of their own personal privacy rights other than the violation alleged to have occurred indirectly by virtue of the publicity given to the deceased . . . ." Williams v. City of Minneola, 575 So. 2d 683, 689 (Fla. Dist. Ct. App. 5th Dist. 1991). The rationale behind this exception "is that the relatives of the deceased have their own privacy interest in protecting their rights in the character and memory of the deceased as

12

well as the right to recover for their own humiliation and wounded feelings caused by the publication." Loft, 408 So. 2d at 624. This "relational right of privacy" is very limited and applies only where "a defendant's conduct towards a decedent [is] found to be sufficiently egregious to give rise to an independent cause of action in favor of members of [the] decedent's immediate family." Id. Such "unusual circumstances" are rare and, as a result, claims for a derivative right to pursue false light claims "will usually be barred." Id.

Based on the foregoing standard, we concur with the district court that the Picture's portrayal of Billy Tyne was not sufficiently egregious to warrant invocation of the "relational" right of privacy doctrine. The Florida Courts have made it plain that this exception was not crafted to provide a derivative cause of action for minor technical inaccuracies, or even major ones. See id.; Williams, 575 So. 2d at 689-90. Rather, the defendant's treatment of the decedent must be "egregious." Loft, 408 So. 2d at 624. The Perfect Storm's portrayal of Billy Tyne, while perhaps not entirely ingenuous, falls considerably short of this standard. The Fourth District of the Florida Court of Appeals reached a similar conclusion in Loft, where the decedent was portrayed as a ghost that haunted various Eastern Airlines flights. See id. at 620. That portrayal was not "of a sufficiently egregious nature to establish a claim of invasion of privacy . . . ." Id. at 625; compare with

13

Williams, 575 So. 2d at 690 (finding that "the display of grotesque pictures of a deceased's body" was precisely the sort of "egregious situations envisioned in Loft," but refusing to reverse the district court's grant of summary judgment based on a "limited display of the videotape and the photographs").  We do not believe that the Florida courts, in crafting this limited "relational" right to privacy, intended to extend the exception to depictions that are merely inaccurate or dramatized. Accordingly, we conclude that the exception is inapplicable in this case.

**QUESTION CERTIFIED** to the Florida Supreme Court regarding the scope of Fla. Stat. § 540.08.