901 So.2d 802 (2005)
Erica TYNE, etc., et al., Appellants,
v.
TIME WARNER ENTERTAINMENT COMPANY, L.P., etc., et al., Appellees.
No. SC03-1251.
Supreme Court of Florida.
April 21, 2005.
*803 Stephen J. Calvacca of Law Office of Calvacca Moran, and W. Edward McLeod, Jr., Winter Park, FL; Jon J. Mills and Timothy McLendon, Gainesville, FL, for Appellant.
Gregg D. Thomas and James J. McGuire of Holland and Knight, Tampa, FL, for Appellee.
John F. Bradley, Stephen M. Carlisle, Julee L. Milham, Robert A. McNeely, and Jamin D. Rubenstein, Fort Lauderdale on behalf of the Entertainment, Arts and Sports Law Section of the Florida Bar; Douglas E. Mirell and Jean-Paul Jassy of Loeb and Loeb, LLP, Los Angeles, CA, on behalf of the Motion Picture Association of America, Inc., Association of American Publishers, Inc., Freedom to Read Foundation, American Booksellers for Free Expression, Publishers Marketing Association, Video Software Dealers Association, Magazine Publishers Association and Comic Book Legal Defense Fund; and David S. Bralow, Senior Counsel, Tribune Company, Orlando, FL, George Freeman, Associate General Counsel, New York Times Company, New York, NY, and Charles A. Carlson of Barnett Bolt Kirkwood and Long, Tampa, FL, on behalf of the Florida Press Association, the First Amendment Foundation, the Florida Association of Broadcasters, Orlando Sentinel Communications, Sun-Sentinel Company, and their parent, Tribune Company, the New York Times Regional Newspaper, on behalf of its 14 daily newspapers, including The (Lakeland) Ledger, Sarasota Herald-Tribune, (Ocala) Star-Banner, and The Gainesville Sun, and Media General Operations, Inc., publisher of The Tampa Tribune, Highlands Today, Hernando Today, and the Jackson County Floridan, and owner of WFLA-TV Channel 8, WJWB-TV Channel 17, and WMBB Channel 13 (collectively referred to as "Florida Media Organizations"), As Amici Curiae.
WELLS, J.
We have for review a question of Florida law certified by the United States Eleventh Circuit Court of Appeals that is determinative of a cause pending in that court and for which there appears to be no controlling precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const.
The pertinent facts of this case, as set forth by the Eleventh Circuit, are as follows:[1]
In October, 1991, a rare confluence of meteorological events led to a "massively powerful" weather system off the New England coast. The fishing vessel known as the Andrea Gail was caught in this storm and lost at sea. All six of the crewmembers on board the Andrea Gail, including Billy Tyne and Dale Murphy, Sr., were presumed to have been killed. Newspaper and television reports extensively chronicled the storm and its impact. Based on these reports, and personal interviews with meteorologists, local fisherman, and family members, Sebastian Junger penned a book, entitled The Perfect Storm: A True Story of Men Against the Sea, recounting the storm and the last voyage of the Andrea Gail and its crew. The book was published in 1997.

*804 That same year, Warner Bros. purchased from Junger and his publisher the rights to produce a motion picture based on the book. Warner Bros. released the film, entitled The Perfect Storm, for public consumption in 2000. The Picture depicted the lives and deaths of Billy Tyne and Dale Murphy, Sr., who were the main characters in the film. It also included brief portrayals of each individual that is a party to this appeal. Nonetheless, Warner Bros. neither sought permission from the individuals depicted in the picture nor compensated them in any manner.
Unlike the book, the Picture presented a concededly dramatized account of both the storm and the crew of the Andrea Gail. For example, the main protagonist in the Picture, Billy Tyne, was portrayed as a down-and-out swordboat captain who was obsessed with the next big catch. In one scene, the Picture relates an admittedly fabricated depiction of Tyne berating his crew for wanting to return to port in Gloucester, Massachusetts. Warner Bros. took additional liberties with the land-based interpersonal relationships between the crewmembers and their families.
While the Picture did not hold itself out as factually accurate, it did indicate at the beginning of the film that "THIS FILM IS BASED ON A TRUE STORY." A disclaimer inserted during the closing credits elaborated on this point with the following statement: "This film is based on actual historical events contained in `The Perfect Storm' by Sebastian Junger. Dialogue and certain events and characters in the film were created for the purpose of fictionalization."
On August 24, 2000, the Tyne and Murphy children, along with Tigue and Kosko, filed suit against Warner Bros. [in the United States District Court for the Middle District of Florida] seeking recompense under Florida's commercial misappropriation law [section 540.08, Florida Statutes (2000)][2] and for common law false light invasion of privacy.
*805 Tyne v. Time Warner Entertainment Co., L.P., 336 F.3d 1286, 1288-89 (11th Cir.2003).
Appellees thereafter filed a motion for summary judgment, asserting that there were no genuine issues of material fact to be resolved by a jury. The district court granted the motion of appellees on all claims. Tyne v. Time Warner Entertainment Co., L.P., 204 F.Supp.2d 1338 (M.D.Fla.2002).
With respect to the appellants' claim of commercial misappropriation under section 540.08, Florida Statutes, the district court held that section 540.08 applies only to actions in which a person's name or likeness is used for commercial trade or advertising purposes. "[M]erely using an individual's name or likeness in a publication is not actionable under § 540.08. A motion picture is not, therefore, in and of itself, a `commercial purpose.'" 204 F.Supp.2d at 1341. The court based this decision on the Fourth District Court of Appeal's decision in Loft v. Fuller, 408 So.2d 619 (Fla. 4th DCA 1981). The federal district court further concluded that the promotion and advertising of the picture did not constitute a commercial purpose. In so holding, the court quoted section 47 of the Restatement (Third) of Unfair Competition (1995), which excludes the use of a person's identity in "entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses." Because the appellants failed to raise a genuine issue of material fact as to whether the use of the decedents' or plaintiffs' likenesses were used for the purposes of trade or a commercial purpose, the court granted summary judgment on this claim. Tyne, 204 F.Supp.2d at 1342.
The appellants appealed the district court's decision to the Eleventh Circuit Court of Appeals, arguing that the district court erred in finding that section 540.08 did not apply to the facts of this case. The Eleventh Circuit recognized that this issue is similar to that presented in Loft, as held by the district court, but concluded that it was uncertain as to the scope of section 540.08 and the applicability of Loft to these circumstances. The court thus certified the following question to this Court:
TO WHAT EXTENT DOES SECTION 540.08 OF THE FLORIDA STATUTES APPLY TO THE FACTS OF THIS CASE?
Tyne, 336 F.3d at 1291. This Court granted review to address the certified question. As the Eleventh Circuit stated we could, *806 we rephrase the certified question to the specific issue that we conclude is presented by this case.
DOES THE PHRASE "FOR PURPOSES OF TRADE OR FOR ANY COMMERCIAL OR ADVERTISING PURPOSE" IN SECTION 540.08(1), FLORIDA STATUTES, INCLUDE PUBLICATIONS WHICH DO NOT DIRECTLY PROMOTE A PRODUCT OR SERVICE?

ANALYSIS
The question before this Court is a narrow one. As noted by the federal courts, the Fourth District Court of Appeal considered the applicability of section 540.08, Florida Statutes, to a publication which did not directly promote a product or service, but this Court has not directly addressed this question.
In Loft, Dorothy Loft and her two children brought an action for, among other things, violation of section 540.08 for the alleged unauthorized publication of the name and likeness of the Lofts' deceased husband and father, Robert Loft. Robert Loft had been the captain of an Eastern Airlines flight that crashed while en route from New York to Miami in 1972. The crash was followed by reports of the appearance of apparitions of the flight's crew members, including Robert Loft, on subsequent flights. Subsequent to the press stories, The Ghost of Flight 401 was published in 1976. The book was a nonfictionalized account by the author of his investigation of the reports. A movie was also made based on this book. Loft, 408 So.2d at 620.
The Fourth District held as follows:
In our view, section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher. Thus, the publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else. Such is not the case here.
While we agree that at least one of the purposes of the author and publisher in releasing the publication in question was to make money through sales of copies of the book and that such a publication is commercial in that sense, this in no way distinguishes this book from almost all other books, magazines or newspapers and simply does not amount to the kind of commercial exploitation prohibited by the statute. We simply do not believe that the term "commercial," as employed by Section 540.08, was meant to be construed to bar the use of people's names in such a sweeping fashion. We also believe that acceptance of appellants' view of the statute would result in substantial confrontation between this statute and the first amendment to the United States Constitution guaranteeing freedom of the press and of speech. Having concluded that the publication as alleged is not barred by Section 540.08, we need not decide if, under the allegations of the complaint, the book was of current and legitimate public interest, thus removing it entirely from the scope of the statute.
Loft, 408 So.2d at 622-23 (emphasis added) (citations omitted).
We approve the Fourth District's logical construction of section 540.08 in Loft. This construction has been applied to cases construing the statute for more than thirty years, and the statute has remained unchanged by the Legislature for this period.
For example, in Valentine v. C.B.S., Inc., 698 F.2d 430 (11th Cir.1983), at issue was a song written by Bob Dylan and *807 Jacques Levy depicting the murder trial of prizefighter Rubin "Hurricane" Carter. The plaintiff, a witness in the murder trial, brought an action alleging a violation of section 540.08 because the song falsely implied that she participated in a conspiracy to unjustly convict Carter. Id. at 431. The Eleventh Circuit held that the plaintiff's claim was not actionable under section 540.08. Citing Loft, the court reasoned that the "use is actionable under the statute because of the way the defendants associate the individual's name or personality with something else." Id. at 433. The court stated:
The trial court properly held that, as a matter of law, the ballad "Hurricane" did not commercially exploit Valentine's name. The defendants did not use her name to directly promote a product or service. Use of a name is not harmful simply because it is included in a publication sold for profit. As the court correctly noted, an interpretation that the statute absolutely bars the use of an individual's name without consent for any purpose would raise grave questions as to its constitutionality. The court properly construed the statute to avoid confronting the constitutional question. United States v. Clark, 445 U.S. 23, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980).
Id.
In Lane v. MRA Holdings, LLC, 242 F.Supp.2d 1205 (M.D.Fla.2002), the Middle District of Florida considered whether section 540.08 was violated by the defendants' display of the plaintiff exposing her breasts in a "Girls Gone Wild" video. The plaintiff had consented to being videotaped but was unaware that the video would be sold to the public.
The federal court rejected the plaintiff's section 540.08 argument, reasoning as follows:
Under Fla. Stat. § 540.08, the terms "trade," "commercial," or "advertising purpose" mean using a person's name or likeness to directly promote a product or service.
As a matter of law, this Court finds that Lane's image and likeness were not used to promote a product or service. In coming to this conclusion, this Court relies on section 47 of the Restatement (Third) of Unfair Competition which defines "the purposes of trade" as follows:
The names, likeness, and other indicia of a person's identity are used "for the purposes of trade" ... if they are used in advertising the user's goods or services, or are placed on merchandise marketed by the user, or are used in connection with services rendered by the user. However, use "for the purpose of trade" does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising incidental to such uses.
Therefore, under this definition, the "use of another's identity in a novel, play, or motion picture is ... not ordinarily an infringement ... [unless] the name or likeness is used solely to attract attention to a work that is not related to the identified person." Id. at comment c.
In this case, it is irrefutable that the Girls Gone Wild video is an expressive work created solely for entertainment purposes. Similarly, it is also irrefutable that while Lane's image and likeness were used to sell copies of Girls Gone Wild, her image and likeness were never associated with a product or service unrelated to that work. Indeed, in both the video and its commercial advertisements, Lane is never shown endorsing or promoting a product, but rather, as part of an expressive work in which she voluntarily participated.
*808 Lane, 242 F.Supp.2d at 1212-14 (citations omitted); see also Epic Metals Corp. v. CONDEC, Inc., 867 F.Supp. 1009 (M.D.Fla.1994) (holding that section 540.08 prevents the use of a person's name or likeness to directly promote the product or service of publisher); Nat'l Football League v. The Alley, Inc., 624 F.Supp. 6 (S.D.Fla.1983) (same). We agree with the reasoning of these decisions and Loft that the purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else. Loft, 408 So.2d at 622.
We disagree with appellants' argument that to uphold the construction given to the statute in Loft renders the exceptions contained in section 540.08(3)(a) and (b) superfluous. Applying the statute to only those situations that "directly promote a product or service" does not necessarily mean that the use is in an advertisement. For example, in Ewing v. A-1 Management, Inc., 481 So.2d 99 (Fla. 3d DCA 1986), the defendants published the names and addresses of the plaintiffs as parents of a fugitive from justice on a wanted poster distributed by the defendant surety company after the plaintiff's son fled while on bail. The Third District Court of Appeal concluded that while this use of the plaintiffs' names fell within the scope of section 540.08(1), the use was exempted under the newsworthiness exemption of section 540.08(3)(a). Thus, as appellees argue, the newsworthiness exemption served an entirely practical, nonredundant function. See also Am. Ventures, Inc. v. Post, Buckley, Schuh & Jernigan, Inc., No. C92-1817Z, 1993 WL 468643 (W.D.Wash. May 18, 1993) (applying Florida law and finding that plaintiff had properly stated a cause of action under section 540.08 for use of plaintiff's resume in connection with job proposalto promote a service).
With respect to the resale exemption, we also find appellees' argument persuasive. Appellees argue that this exemption does not merely permit a defendant to resell an artistic work that is already outside the scope of the statute. The exemption instead permits retailers and other distributors of artistic works to promote and advertise their products and establishments by using the names and likenesses of the artists and celebrities whose works they are selling. The exemption does not simply authorize the resale of the exempted works themselves.
Moreover, it should be emphasized that the Legislature enacted section 540.08 in 1967. Since that time, the only amendment to the statute was to rephrase it in gender neutral terms. The Legislature has not amended the statute in response to the decisions that have required that the statute apply to a use that directly promotes a product or service. This inaction may be viewed as legislative acceptance or approval of the judicial construction of the statute. Goldenberg v. Sawczak, 791 So.2d 1078, 1083 (Fla.2001).
Finally, as recognized by United States District Court Judge Conway in the decision of the United States District Court, we find that defining the term "commercial purpose" in section 540.08 to apply to motion pictures or similar works raises a fundamental constitutional concern. As Judge Conway stated:
[T]he Court notes the following statement of the United States Supreme Court:
It is urged that motion pictures do not fall within the First Amendment's aegis because their production, distribution, and exhibition is a large-scale business conducted for private profit. We cannot agree. That books, newspapers, and magazines are published and sold for profit does not prevent *809 them from being a form of expression whose liberty is safeguarded by the First Amendment. We fail to see why operation for profit should have any different effect in the case of motion pictures.
... For the foregoing reasons, we conclude that expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments.

Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501-02, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). It is thus clear that the Picture is entitled to First Amendment protection, and would therefore, be excepted from liability under § 540.08. This provides another basis for this Court's conclusion that Defendants are entitled to summary judgment on these claims.
Tyne v. Time Warner Entertainment Co., L.P., 204 F.Supp.2d 1338, 1342 (M.D.Fla.2002). Other federal courts have similarly concluded that works such as the picture in the instant case would be protected by the First Amendment and that they do not constitute a commercial purpose.
In Seale v. Gramercy Pictures, 949 F.Supp. 331 (E.D.Penn.1996), a federal court in Pennsylvania considering a commercial misappropriation claim based on a motion picture that dramatized a historical event expressly distinguished motion pictures from pure commercial speech: "[I]n addressing right of publicity claims, courts have been mindful that the First Amendment provides greater protection to works of artistic expression such as movies, plays, books, and songs, than it provides to pure `commercial' speech." Id. at 337. The court thus concluded that the plaintiff failed to raise a genuine issue of material fact showing that the defendant's use of the name and likeness in the film and on the cover of the home video was "for the purposes of trade" or "for a commercial purpose":
The Defendants' use of the Plaintiff's name and likeness was for the purpose of First Amendment expression: the creation, production, and promotion of a motion picture and history book which integrates fictitious people and events with the historical people and events surrounding the emergence of the Black Panther Party in the late 1960's. The Defendants' use of the Plaintiff's name and likeness on the cover of the pictorial history book and on the cover for the home video are clearly related to the content of the book and the film, the subject matter of which deals with the Black Panther Party and the Plaintiff's role as co-founder of the Party. The Defendants are entitled to judgment as a matter of law as to Plaintiff's right of publicity claim insofar as that claim relates to Defendants' use of Plaintiff's name and likeness in the film, pictorial history book, and on the cover of the home video.
Id.
In Cardtoons L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959 (10th Cir.1996), the Tenth Circuit recognized that an "expressive work" protected by the First Amendment was not commercial speech because commercial speech is best understood as speech that merely advertises a product or service for business purposes. Id. at 970. Similarly, in Comedy III Productions, Inc. v. Gary Saderup, Inc., 25 Cal.4th 387, 106 Cal.Rptr.2d 126, 21 P.3d 797, 802 (2001), the California Supreme Court held that an artist who sold lithographs and t-shirts bearing the image of the Three Stooges did not violate the plaintiffs' right of publicity because the case did not concern commercial speech. "As the trial court found, [the defendant's] portraits of The Three Stooges are expressive *810 works and not an advertisement for or endorsement of a product." Id.
Not only do these decisions demonstrate that the common usage of the term "commercial" in the commercial misappropriation and right of publicity context is indeed limited to the promotion of a product or service as the courts construing section 540.08 have concluded, but they also indicate that such works should be protected by the First Amendment. See also Partington v. Bugliosi, 56 F.3d 1147 (9th Cir.1995); Matthews v. Wozencraft, 15 F.3d 432 (5th Cir.1994); Ruffin-Steinback v. dePasse, 82 F.Supp.2d 723 (E.D.Mich.2000); Guglielmi v. Spelling-Goldberg Prods., 25 Cal.3d 860, 160 Cal.Rptr. 352, 603 P.2d 454, 461-62 (1979) (Bird, C.J., concurring, with majority of court joining her concurrence) ("While few courts have addressed the question of the parameters of the right of publicity in the context of expressive activities, their response has been consistent. Whether the publication involved was factual and biographical or fictional, the right of publicity has not been held to outweigh the value of free expression.").
This Court has an obligation to give a statute a constitutional construction where such a construction is possible. This Court has stated that it is
committed to the fundamental principle that it has the duty if reasonably possible, and consistent with constitutional rights, to resolve doubts as to the validity of a statute in favor of its constitutional validity and to construe a statute, if reasonable possible, in such a manner as to support its constitutionalityto adopt a reasonable interpretation of a statute which removes it farthest from constitutional infirmity.
Corn v. State, 332 So.2d 4, 8 (Fla.1976); see also Sandlin v. Criminal Justice Standards & Training Comm'n, 531 So.2d 1344, 1346 (Fla.1988); Industrial Fire & Casualty Ins. Co. v. Kwechin, 447 So.2d 1337 (Fla.1983); Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815 (Fla.1983). Our construction of the statute in this case adheres to this obligation.
For the foregoing reasons, we answer the rephrased certified question in the negative and hold that the term "commercial purpose" as used in section 540.08(1) does not apply to publications, including motion pictures, which do not directly promote a product or service. We approve Loft's construction of section 540.08. We, however, note that our decision is limited only to answering the rephrased question certified by the Eleventh Circuit. This decision does not foreclose any viable claim that appellants may have under any other statute or under the common law.
It is so ordered.
PARIENTE, C.J., and ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., dissents.
NOTES
[1] The appellants in this case are Erica Tyne and Billie-Jo Francis Tyne, individually and on behalf of decedent Frank William "Billy" Tyne, Jr.; Debra J. Tigue, individually; Dale R. Murphy, Jr., a minor, individually and on behalf of decedent Dale R. Murphy, by and through his next of kin and guardian, Jerilynn M. Amrhein, and Douglas Edward Kosko, individually.

The appellees in this case are Time Warner Entertainment Company, L.P., d/b/a Warner Bros. Pictures, a Delaware limited partnership, Baltimore/Spring Creek Pictures, L.L.C., a Delaware limited liability company, and Radiant Productions, Inc., a Delaware corporation.
[2] 540.08. Unauthorized publication of name or likeness.

(1) No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:
(a) Such person; or
(b) Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness; or
(c) If such person is deceased, any person, firm or corporation authorized in writing to license the commercial use of her or his name or likeness, or if no person, firm or corporation is so authorized, then by any one from among a class composed of her or his surviving spouse and surviving children.
(2) In the event the consent required in subsection (1) is not obtained, the person whose name, portrait, photograph, or other likeness is so used, or any person, firm, or corporation authorized by such person in writing to license the commercial use of her or his name or likeness, or, if the person whose likeness is used is deceased, any person, firm, or corporation having the right to give such consent, as provided hereinabove, may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.
(3) The provisions of this section shall not apply to:
(a) The publication, printing, display, or use of the name or likeness of any person in any newspaper, magazine, book, news broadcast or telecast, or other news medium or publication as part of any bona fide news report or presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes;
(b) The use of such name, portrait, photograph, or other likeness in connection with the resale or other distribution of literary, musical, or artistic productions or other articles of merchandise or property where such person has consented to the use of her or his name, portrait, photograph, or likeness on or in connection with the initial sale or distribution thereof; or
(c) Any photograph of a person solely as a member of the public and where such person is not named or otherwise identified in or in connection with the use of such photograph.
(4) No action shall be brought under this section by reason of any publication, printing, display, or other public use of the name or likeness of a person occurring after the expiration of 40 years from and after the death of such person.
(5) As used in this section, a person's "surviving spouse" is the person's surviving spouse under the law of her or his domicile at the time of her or his death, whether or not the spouse has later remarried; and a person's "children" are her or his immediate offspring and any children legally adopted by the person. Any consent provided for in subsection (1) shall be given on behalf of a minor by the guardian of her or his person or by either parent.
(6) The remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy.