[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 18, 2006
THOMAS K. KAHN
CLERK

Nos. 04–15341 & 04-15561
_____

D.C. Docket No. 04-20004–CV–MGC

THAIS CARDOSO ALMEIDA,

Plaintiff–Appellant,

versus

AMAZON.COM, INC.,

Defendant–Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(July 18, 2006)**

Before TJOFLAT and HULL, Circuit Judges, and RESTANI[*], Judge.

RESTANI, Judge:

_____

[*]Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

Thais Cardoso Almeida brought this action against Amazon.com, Inc. ("Amazon") for displaying her image on its websites in furtherance of its sale of the book Anjos Proibidos. Almeida asserted claims against Amazon pursuant to Fla. Stat. § 540.08 (West 2006), for civil theft pursuant to Fla. Stat. § 772.11 (West 2006), and under Florida's common law doctrine of invasion of privacy. The district court granted summary judgment in favor of Amazon as to all of Almeida's claims. The district court held that Almeida's right of publicity claim under § 540.08 and common law is preempted by the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230 (2000), and is otherwise unavailable under Florida's statutory first-sale doctrine. As to Almeida's civil theft claim, the district court held that Almeida failed to establish Amazon's intent to misappropriate Almeida's image. We affirm the district court's grant of summary judgment, although with respect to Almeida's right of publicity claim, we do so on different grounds.

**BACKGROUND**

This case involves Amazon.com, an internet retailer, and its display of book cover images in furtherance of its internet book sales. At issue here is a photograph of the plaintiff Almeida taken when she was ten years old and displayed on the cover and inside the second edition of the photographic book

_Anjos Proibidos_, or "Forbidden Angels." In essence, Almeida claims that Amazon should not display her image to promote the sale of _Anjos Proibidos_ because she did not consent and did not receive just compensation for the use of her image.

In 1991, fashion photographer Fabio Cabral requested permission from Almeida's mother to photograph her daughter for an artistic photo exhibit, and she signed an authorization form that provided:

> The legal representative for the photographed minor both listed below authorizes free from restrictions the use of the photographic image produced by the photographer, Fabio G.M. Cabral, in an exhibition entitled "18 Girls Under 18 Years" and in the photographic book "PORTPHOLICS BOOK" No. 3 of the same title as the exhibition for use during the vernissage and launch at the "COLLECTORS" photographic gallery. The authorization extends to the invitation, the poster and printed promotional material for the exhibition and launch of the book.

Almeida's image was displayed at Cabral's two-day exhibit, at which the first edition of _Anjos Proibidos_ was offered for sale, displaying black and white photographs of girls between the ages of ten and seventeen, including a photograph of Almeida inside the book. Two hundred copies of the book were sold before the authorities in Sao Paulo seized the remaining copies. Cabral and the book's publisher, Itamarati Grafica, were prosecuted for producing a work of child pornography, and both were acquitted.

In 2000, Ophelia Editions published a second edition of Anjos Proibidos, which is the same in all respects, except that Almeida's picture is now on the book's cover, there is a new introduction, and a few new pictures of other girls appear inside the book. The second edition was offered for sale on Amazon's website.

Generally, Amazon is recognized as a leading internet retailer with a particular focus on online book sales. It offers its customers a searchable product database, order placement capability, and delivery services through a world-wide distribution system. In addition, Amazon enters agreements with web operators to link potential customers to Amazon's websites in exchange for a percentage of the sales price. It is customary business practice for Amazon to provide a product detail page that displays the cover of each book offered for sale, as well as text describing the book.

In 2002, Almeida discovered that her picture was being displayed on Amazon.com websites in furtherance of the sale of the second edition of Anjos Proibidos. Amazon's product detail page displayed the second edition cover photograph of Almeida and a quote attributed to a ten-year old Almeida: "I really liked Fabio. He's super-cool. I never felt any shame in making the photos."

On March 6, 2003, Almeida's attorney sent a letter to Amazon requesting

4

statutory damages, pursuant to Fla. Stat. § 540.08, for its unauthorized use of her image. On March 11, 2003, Amazon responded by letter saying that it would voluntarily remove the listing for Anjos Proibidos from its websites. The listing with Almeida's image was in fact removed promptly from Amazon's websites. Moreover, there is no indication that Amazon had knowledge or should have had knowledge that the book cover displayed an image that the author and publisher were not authorized to use. On July 7, 2003, Almeida's attorney sent a civil theft demand letter to Amazon pursuant to Fla. Stat. § 772.011, to which Amazon apparently did not respond.

On November 14, 2003, Almeida filed suit in Miami-Dade County, Florida asserting claims under: (1) the right of publicity statute, Fla. Stat. § 540.08; (2) the civil theft statute, Fla. Stat. § 772.11; and (3) the Florida common law invasion of privacy doctrine. On January 2, 2004, Amazon invoked diversity jurisdiction and removed the case to federal district court. On July 30, 2004, the district court granted Amazon's motion for summary judgment as to all of Almeida's claims.

The district court held that Almeida may not recover under section 540.08 because the subject matter of her claim has been preempted by the CDA. Assuming arguendo that the CDA does not preempt the subject matter of Almeida's section 540.08 claim, the district court concluded that Almeida

5

consented to Cabral's use of her image, and, therefore, section 540.08(3)(b) bars application of the statute. Further, the district court dismissed Amazon's invasion of privacy claim on the same basis as the statutory right of publicity claim.[1] As to Almeida's civil theft claim, the district court determined that Almeida failed to establish Amazon's felonious intent by clear and convincing evidence. Finally, the district court awarded Amazon attorney's fees based on Almeida's civil theft claim.

On appeal to this court, Almeida challenges the district court's decision as to the CDA on a number of grounds. First, Almeida argues that the district court erred by raising the CDA sua sponte when Amazon was required to raise the CDA

_____

[1]Florida common law recognizes four branches of the tort of invasion of privacy: appropriation, intrusion, public disclosure of private facts, and false light in the public eye. Allstate Ins. Co. v. Ginsberg, 863 So. 2d 156, 162 (Fla. 2003). Apparently, Almeida's invasion of privacy claim falls under the misappropriation of property arm of the invasion of privacy doctrine. See Compl. ¶ 142 (stating that she is entitled to "compensatory damages [to] compensate her for the unauthorized use of her image, such sum to include the total gross revenues received by AMAZON through the unauthorized use of such image"). Although section 540.08 now codifies the common law right against misappropriation, the statute permits a party to proceed under available common law invasion of privacy theories. See § 540.08(6) (stating that "[t]he remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy").
    Although Almeida challenges the district court's grant of summary judgment as to her common law misappropriation claim, she appears to agree with the district court that her common law misappropriation claim is substantially identical to her statutory right of publicity claim and should be resolved on the same basis. See Byrd v. Hustler Magazine, Inc., 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983). As the statutory and common law claims are substantially identical and the parties provide minimal briefing as to the common law misappropriation claim, we do not address this claim separately from Almeida's statutory right of publicity claim.

6

as an affirmative defense.  Second, Almeida asserts that the right of publicity is an intellectual property right and the CDA does not apply to causes of action predicated on "any law pertaining to intellectual property."  Third, Almeida contends that the CDA does not immunize Amazon because it is not an "information content provider" as that term is defined by the CDA.

As to the merits of Almeida's right of publicity claim, Almeida argues that she never consented to the use of her image in the second edition of <u>Anjos Proibidos</u>, so the first-sale doctrine does not apply.  Finally, with respect to the district court's civil theft determination, Almeida argues that the district court erred by failing to allow for meaningful discovery as to Amazon's intent, by awarding attorney's fees based on finding that the claim lacked a "substantial basis in law or in fact," and by entering a fee award based on its <u>in camera</u> review without an explanation as to the amount of fees.

**DISCUSSION**

**A.    Right of Publicity**

**1.    Preemption by the CDA**

First, we address the district court's conclusion that the CDA preempts the subject matter of Almeida's right of publicity claim.  Subsection 230(c) of the CDA provides:

7

(c) Protection for "Good Samaritan" blocking and screening of offensive material
(1) Treatment of publisher or speaker

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
(2) Civil liability

No provider or user of an interactive computer service shall be held liable on account of—(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c).[2]  The CDA preempts state law that is contrary to this subsection.  See 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with

---

[2]Section 230(f)(2) defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).  Section 230(f)(3) defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).  Almeida does not dispute that Amazon is an "interactive computer service," but she does argue that Amazon is not entitled to immunity because it is an "information content provider."

8

this section.")

The majority of federal circuits have interpreted the CDA to establish broad "federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." Zeran v. Am. Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997).[3]  In this case, the district court adopted this approach, but even this broad statutory immunity does not apply without limitation.  See 47 U.S.C. § 230(e)(1) (providing that "[n]othing in this section shall be construed to impair the enforcement of . . . any . . . Federal

---

[3]The language of section 230(c)(2) is clearly inconsistent with state law that makes interactive service providers liable based on their efforts to screen content.  We note that the majority of circuits also read subsection (c)(1), though phrased as a definition, to block civil liability when interactive service providers refrain from filtering or censoring the information on their sites.  See Batzel v. Smith, 333 F.3d 1018, 1026–27 (9th Cir. 2003); Green v. Am. Online, 318 F.3d 465, 470–71 (3d Cir. 2003); Ben Ezra, Weinstein & Co. v. Am. Online, Inc., 206 F.3d 980, 985–86 (10th Cir. 2000); Zeran, 129 F.3d at 330.

In contrast, the Seventh Circuit determined that the CDA is not necessarily inconsistent with state laws that create liability for interactive service providers that refrain from filtering or censoring content.  See Doe v. GTE Corp., 347 F.3d 655, 660 (7th Cir. 2003).  We note, however, that the Seventh Circuit's rationale may be consistent with Congress' approach in the Digital Millennium Copyright Act of 1998 ("DMCA"), in which it granted copyright infringement immunity to "innocent" service providers who can prove that they do not have actual or constructive knowledge of the copyright infringement.  17 U.S.C. § 512(c)(1) (2000); see Perfect 10, Inc. v. CCBill, LLC, 340 F. Supp. 2d 1077, 1087 (C.D. Cal. 2004) , 340 F. Supp. 2d at 1087 (stating that the "purpose of the DMCA is to relieve internet service providers of the duty of patrolling the Internet for copyright infringements that are not immediately apparent or of which they have no actual knowledge").

In the present case, there is no issue of actual or constructive knowledge because the Florida right of publicity does not impose upon interactive service providers an obligation to filter or censor content.  Moreover, as a factual matter, there is no indication that Amazon had knowledge of the allegedly misappropriated image and it responded promptly to Almeida's notice by removing Anjos Proibidos from its websites.

9

criminal statute"); 47 U.S.C. § 230(e)(2) (providing that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property"); 47 U.S.C. § 230(e)(3) (providing that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section"); 47 U.S.C. § 230(e)(4) (providing that "[n]othing in this section shall be construed to limit the application of the Electronic Communications Privacy Act of 1986 . . . or any similar State law").  Here, the district court did not consider whether immunizing Amazon from liability under the right of publicity would limit any law pertaining to intellectual property.

Whether the CDA immunizes an interactive service provider from a state law right of publicity claim is an issue of first impression for this Court.  Few federal courts have considered the effect of § 230(e)(2) on the CDA's grant of immunity, although it is clear that "any law pertaining to intellectual property" at least refers to the three traditional forms of intellectual property: copyright, patent, and trademark.  See Allison v. Vintage Sports Plaques, 136 F.3d 1443, 1448 (11th Cir. 1998) (stating that the three principal forms of intellectual property are copyright, patent, and trademark).  Thus, federal district courts have held that § 230(e)(2) unambiguously precludes applying the CDA to immunize interactive service providers from trademark claims.  See Ford Motor Co. v.

10

Greatdomains.com, Inc., 60 U.S.P.Q. 2D 1446 (E.D. Mich. 2001) (construing § 230(e)(2) to preclude application of CDA immunity to claims based on the violation of federal trademark laws); Gucci Am., Inc. v. Hall & Assocs., 135 F. Supp. 2d 409, 413 (S.D.N.Y. 2001) (recognizing that immunizing trademark infringement claims would limit laws pertaining to intellectual property).

Almeida contends that the CDA does not preempt section 540.08 because it is a quintessential right of publicity claim, and the right of publicity is a widely recognized intellectual property right. See ETW Corp. v. Jireh Publ'g, Inc., 332 F.3d 915, 928 (6th Cir. 2003) (stating that "[t]he right of publicity is an intellectual property right of recent origin which has been defined as the inherent right of every human being to control the commercial use of his or identity"); Allison, 136 F.3d at 1448 (concluding that the common law right of publicity is an intellectual property right for purposes of the first-sale doctrine); J. Thomas McCarthy, Melville B. Nimmer & the Rights of Publicity: A Tribute, 34 U.C.L.A. L. Rev. 1703, 1712 (1987) (stating that the right of publicity has "matured into a distinctive legal category occupying an important place in the law of intellectual property"); Black's Law Dictionary 813 (7th ed. 1999) (defining intellectual property as follows: "A category of intangible rights protecting commercially valuable products of the human intellect. The category comprises primarily

11

trademark, copyright, and patent rights, but also includes trade-secret rights, publicity rights, moral rights, and rights against unfair competition.").

Further, Almeida argues that § 230(e)(2) extends to all intellectual property rights, even non-traditional state-law intellectual property rights. See Perfect 10, 340 F. Supp. 2d at 1108–1109 (holding that based on § 230(e)(2) the CDA does not apply to California's statutory and common law right of publicity claims). Indeed, courts have held that intellectual property is not a static concept for purposes of the CDA. Gucci, 135 F. Supp. 2d at 414 (noting that "nowhere does Section 230 state that the laws to which it refers are . . . limited to the intellectual property laws as they existed [when enacted]"). Almeida contends that extending the meaning of § 230(e)(2) makes sense because the purpose served by publicity rights is similar to that of traditional intellectual property rights. See Zacchini v. Scripps-Howard Broad. Co., 433 U.S. 562, 573 (1977) (explaining that the State's interest in providing a right of publicity is "closely analogous to the goals of patent and copyright law, focusing on the right of the individual to reap the reward of his endeavors and having little to do with protecting feelings or reputation").

Amazon responds that even if the right of publicity protects a type of intellectual property right, Congress did not intend for § 230(e)(2) to apply to publicity rights. First, Amazon argues that Congress did not intend by the CDA to

protect state-law claims.  See 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); but see Perfect 10, 340 F. Supp. at 1107–1109 (holding that § 230(e)(2) applies to California's wrongful use of registered mark law, Cal. Bus. & Prof. Code § 14335, and California's right of publicity law, Cal. Civ. Code § 3344).

Second, Amazon argues that Almeida's right of publicity action is a tort-based suit, and Congress did not intend to limit the CDA's immunity with respect to tort-based suits.  Amazon points to the Sixth Circuit's description of the CDA's purpose in Zeran,

> Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium. The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum.

Zeran, 129 F.3d at 330; see ETW Corp., 332 F.3d at 928 ("The right of publicity is a creature of state law and its violation gives rise to a cause of action for the commercial tort of unfair competition.").[4]

_____

[4]It is also apparent, however, that the right of publicity does not fit neatly into the category of tort-based lawsuits from which Congress sought to immunize interactive service

13

Thus, while there appears to be no dispute that the right of publicity is a type of intellectual property right, Almeida argues that it is not clear from the statute that "any law pertaining to intellectual property" includes claims based upon state intellectual property rights. Moreover, neither party points to any legislative history indicating Congress' intent as to the effect of § 230(e)(2). See Gucci, 135 F. Supp. 2d at 414 n.11 (stating that section 230's legislative history "provides no clues as to the meaning of [section 230(e)(2)]").

While we agree with Almeida that the district court should have addressed § 230(e)(2) before invoking the CDA's grant of immunity, we believe that regardless of the answer to this question, the district court did not need to address the difficult issues of application of the CDA under the facts of this case. In Gucci, the court described the initial § 230(e)(2) issue as, "whether Plaintiff's complaint would withstand a motion to dismiss even in the absence of § 230." Gucci, 135 F. Supp. 2d at 412; Ford Motor Co., 60 U.S.P.Q. 2D 1446 (stating that a motion to dismiss a federal trademark claim against a service provider "must

providers, i.e., dissemination of damaging information via the internet. See Zeran, 129 F.3d at 328 (involving negligence action against AOL alleging unreasonable delay in removing defamatory content); Ben Ezra, 206 F.3d at 983 (involving defamation and negligence claims against AOL); Blumenthal v. Drudge, 992 F. Supp. 44, 46 (D.D.C. 1998) (involving defamation claim); see also Gucci, 135 F. Supp. 2d at 417 (stating that the legislative history reflects only that section 230(c) "immunizes ISPs from defamation and other, non-intellectual property, state law claims arising from third-party content").

14

turn on whether Plaintiffs' Complaint successfully states a claim for violation of the trademark laws without regard to the CDA").  In this case, we ask whether an internet retailer, such as Amazon, could be held liable under Florida's right of publicity statute for displaying a book's cover image in furtherance of the book's sale.  As we explain below, Almeida's right of publicity claim based on Fla. Stat. § 540.08 would not withstand a motion to dismiss under the law.  Therefore, it was unnecessary for the district court to determine whether the CDA preempts Almeida's state law right of publicity claim, and we do not reach any of Almeida's challenges to the district court's application of the CDA here.

## 2. Application of Section 540.08

Almeida alleges that Amazon displayed her image on its websites in order to promote Anjos Proibidos, without her consent or just compensation, in violation of Fla. Stat. § 540.08.  Section 540.08 reads in pertinent part:

> No person shall publish, print, display, or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use . . . .

Fla. Stat. § 540.08(1).  The statute does not apply to:

> (a) The publication, printing, display, or use of the name or likeness of any person in any newspaper, magazine, book, news broadcast or telecast, or other news medium or publication as part

15

of any bona fide news report or presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes;

(b) The use of such name, portrait, photograph, or other likeness in connection with the resale or distribution of literary, musical, or artistic productions or other articles of merchandise or property where such person has consented to use of her or his name, portrait, photograph, or likeness on or in connection with the initial sale or distribution thereof; or

(c) Any photograph of a person solely as a member of the public and where such person is not named or otherwise identified in or in connection with the use of such photograph.

Fla. Stat. § 540.08(3).

In the present case, the district court concluded that Almeida consented to the use of her photograph in the first edition of <u>Anjos Proibidos</u>. Thus, it held that section 540.08(3)(b) bars the statute's application to the subsequent use of Almeida's image in the second edition. Almeida responds that she only consented to the use of her image for the first edition of <u>Anjos Proibidos</u>. As Almeida did not consent to the use of her image in connection with the sale of the second edition, she argues that section 540.08(3)(b) does not apply. We agree with the district court that Almeida has no recovery under section 540.08, although we do not reach the issue of whether section 540.08(3)(b) applies to the facts of this case. Instead, we hold that it is clear from Almeida's complaint that Amazon did not use Almeida's image for trade, commercial, or advertising purposes as those terms are

16

used in the statute.

The Florida legislature enacted section 540.08 in order to expand the remedies available under the common law right against misappropriation.[5] Courts have interpreted the statute's commercial purpose requirement to require that a defendant's unauthorized use "directly promote" a product or service. See Tyne v. Time Warner Entm't Co., L.P., 901 So. 2d 802, 808 (Fla. 2005) (stating that "[t]he purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else"); Loft v. Fuller, 408 So. 2d 619, 622–23 (Fla. Dist. Ct. App. 1981) (explaining that "Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher"). Applying this standard, courts have held that the use of an image in a publication is not for a "commercial purpose" under section 540.08 merely because the publication is offered for sale. Valentine v. C.B.S., Inc., 698 F.2d 430, 433 (11th Cir. 1983); Loft, 408 So. 2d at 622.

---

[5]Under the statutory right of publicity, an individual may bring an action to enjoin the unauthorized use and to recover damages for loss or injury sustained because of the unauthorized publication, including a reasonable royalty and punitive damages. Fla. Stat. § 540.08(2).

The instant section 540.08 action is brought against Amazon, an internet bookseller that provides services similar to a traditional bookseller. Amazon provides its online customers with a searchable book database with links to product detail pages for each book in its database. Each product detail page provides the book's cover image, the publisher's description of the book, and in many instances editorial and customer content. From the product detail page, customers may link to an order placement page, where they may complete their purchase and specify the shipping method. In this manner, Amazon's role as an internet bookseller closely parallels that of a traditional bookseller. Because internet customers are unable to browse through shelves of books and observe the actual book cover photos and publisher content, Amazon replicates the bookstore experience by providing its customers with online cover images and publisher book descriptions.

Almeida argues that all content provided by internet retailers on product detail pages is displayed for a commercial purpose as that term is used in section 540.08. Almeida contends that internet retailers use product detail page content for the purpose of promoting: (1) the sales of particular products, (2) the sales of unrelated products, and (3) the retailer's brand identity. Finally, according to Almeida, all prior cases have held that internet retailers are liable under section

18

540.08 for the unauthorized use of images to promote their products. See Gritzke v. M.R.A. Holding, LLC, 2003 U.S. Dist. LEXIS 9307, at *4 (N.D. Fla. 2003) (concluding that plaintiff stated a claim under section 540.08 by alleging that the producer/seller of a Girls Gone Wild videotape made the plaintiff the focus of the videotape's advertisements, and prominently displayed the plaintiff on the videotape's package, in advertisements, and on the defendant's web site); Bosley v. WildwetT.com, 310 F. Supp. 2d 914, 923 (N.D. Ohio 2004) (granting injunctive relief against producers/sellers of a wet t-shirt contest videotape based upon the factual finding that defendant prominently displayed the plaintiff's name, image, and likeness on the cover of the defendants' video, and that such advertisements were not merely "incidental to the promotion" of these products). We disagree with Almeida's broad interpretation of section 540.08's liability for internet retailers, and we distinguish the cases she cites in support of the proposition that all content on product detail pages is provided for a commercial purpose within the meaning of section 540.08.

First, the defendants in Gritzke and Bosley made the editorial choice to include the plaintiffs' images in the videotape, and to make the plaintiffs the focus of their advertisements, by prominently displaying the plaintiffs on the videotape package, in advertisements, and on defendants' websites.

19

Second, in each case, the plaintiffs alleged that defendants' marketing efforts were aimed at emphasizing the role of plaintiffs. Particularly, in Bosley, the plaintiff was a local news anchorwoman and regional celebrity, which fact the video producers allegedly exploited by marketing the videotape with an emphasis on the appearance of the "naked anchor woman." Bosley, 310 F. Supp. 2d at 917.

In contrast, Amazon does not make editorial choices as to the book cover images it displays on its website. That choice was made by the publisher Ophelia Editions. Moreover, Almeida does not allege that Amazon's display of her image emphasized her role in Cabral's photo exhibit, or that it can be distinguished from Amazon's customary display of book cover images.

Rather, we find that, as a matter of business practice, Amazon's use of book cover images closely simulates a customer's experience browsing book covers in a traditional book store. Thus, it is clear that Amazon's use of book cover images is not an endorsement or promotion of any product or service, but is merely incidental to, and customary for, the business of internet book sales. See Vinci v. Am. Can Co., 591 N.E. 2d 793, 794 (Ohio Ct. App. 1990) (holding that the mention of Olympic athletes' names was

20

incidental to the promotion of Dixie Cups, and thus not a violation of Ohio's common law right of appropriation, because the use was purely informational and there was no implication that the athletes used, supported, or promoted the product); Restatement (Second) of Torts § 652C cmt. d (1977) (stating that the mere incidental use of a person's name or likeness is not actionable under the right of publicity).

Under the allegations of Almeida's complaint, we discern no set of facts by which an internet retailer such as Amazon, which functions as the internet equivalent to a traditional bookseller, would be liable for displaying content that is incidental to book sales, such as providing customers with access to a book's cover image and a publisher's description of the book's content. Accordingly, we affirm the district court's grant of summary judgment as to Amazon's right of publicity claim, but we do so on the ground that Amazon did not use Almeida's image for the purpose of directly promoting a product or service in violation of section 540.08.

## B. Civil Theft

### 1. Felonious Intent

To maintain a cause of action under the civil theft statute, Almeida must show by "clear and convincing evidence" an injury caused by the defendant's

violation of one or more of the provisions of the criminal theft laws found in Fla. Stat. §§ 812.012-037 (West 2006). Fla. Stat. § 772.11; see Palmer v. Gotta Have It Golf Collectibles, Inc., 106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000) (stating that "a cause of action for civil theft 'derives from two statutory sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section'") (quoting Ames v. Provident Life & Accident Ins. Co., 942 F. Supp. 551, 560 (S.D. Fla. 1994)). Almeida claims that she can prove by clear and convincing evidence that Amazon violated section 812.014(1), which provides:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
> (a) Deprive the other person of a right to the property or a benefit from the property.
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1).

In order to establish a violation of section 812.014(1), Almeida must show that Amazon "knowingly obtained or used, or endeavored to obtain or to use," Almeida's property with the "felonious intent" to "appropriate the property to [Amazon's] own use or to the use of any person not entitled to the use of the

22

property." Palmer, 106 F. Supp. 2d at 1303; see Ames, 942 F. Supp. at 560 (holding that the plaintiff must show "felonious intent" to commit theft in order to establish a violation of section 812.014(1)). That is, "[t]heft is a specific intent crime, requiring actual knowledge on the part of the defendant." Healy v. Sun Trust Serv. Corp., 569 So. 2d 458, 460 (Fla. Dist. Ct. App. 1990).

In the instant case, the district court granted summary judgment for Amazon on Almeida's claim, finding no clear and convincing evidence to support the necessary felonious intent on the part of Amazon. Almeida argues that she has a property interest in the photographic image on the cover of Anjos Proibidos, and that Amazon intentionally misappropriated that image. Almeida contends that the district court should have allowed Almeida an opportunity for additional discovery prior to granting Amazon's motion for summary judgment on the ground that Amazon did not act with felonious intent.

We conclude that Almeida has failed to present any evidence that Amazon misappropriated any of her property with felonious intent. There is no evidence that Amazon used Almeida's image with actual knowledge that its use was unauthorized. Moreover, we disagree with Almeida that the district court erred by not providing Almeida with an opportunity for additional discovery on the issue of

Amazon's intent.[6]

Accordingly, we affirm the district court's decision denying Almeida's civil theft claim on summary judgment.

## 2. Attorney's Fees

Next, the court reviews the district court's award of attorney's fees to Amazon on the civil theft claim. Section 772.11 of the civil theft statute provides that "[t]he defendant is entitled to recover reasonable attorney's fees and court costs . . . upon a finding that the claimant raised a claim that was without substantial fact or legal support." Fla. Stat. § 772.11; see Ciaramello v. D'Ambra, 613 So. 2d 1324, 1325 (Fla. Dist. Ct. App. 1991) (interpreting the legislature's intent in wording section 772.11 "to discourage civil theft claims lacking either legal or factual substance by setting a less stringent standard for a fee award than [a] bad faith standard"). Almeida argues that her civil theft claim does not lack a

---

[6]In the instant case, the district court provided Almeida with a full opportunity for discovery as to Amazon's intent. When Amazon filed its motion for summary judgment, Almeida could have moved the court for a continuance in order to conduct additional discovery pursuant to Rule 56(f) . See Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1259 n.3 (11th Cir. 2004) (noting that a party may request discovery by specifically demonstrating "how postponement of a ruling on the motion will enable him, by discovery . . . to rebut the movant's showing of the absence of a genuine issue of fact"). Instead, Almeida cross-moved the district court for summary judgment, indicating her position that the record was sufficient to establish her claims. Moreover, we note that the district court has wide discretion in deciding whether a party is entitled to an opportunity for discovery, see Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1280 (11th Cir. 1998), and in this case we see no indication that additional discovery would enable Almeida to establish Amazon's intent to misappropriate her image.

substantial basis in fact, and that the court erred by entering a fee award based on in camera review and without any reasoning to justify the amount.

We conclude that the district court did not commit clear error in finding that Almeida's civil theft claim lacked substantial factual or legal support. The record lacks any evidence showing Amazon's felonious intent to misappropriate Almeida's property. Moreover, we note that even though the trial court did not clearly articulate its method for calculating attorney's fees, the district court conducted an in camera review of Amazon's un-redacted billing statements, which resulted in a modest award of $3,500 in attorney's fees. See ACLU v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) (implying that where no specific objections are made, the court may rely on affidavits and its own knowledge to determine a reasonable award of attorney's fees). With no evidence indicating that this calculation is unreasonable, we will not remand the case merely for the district court to articulate its basis for this award.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Amazon and award of attorney's fees.