**ALVI ARMANI MEDICAL, INC. and Dr. Antonio Alvi Armani, Plaintiffs,**

v.

**Patrick HENNESSEY and Media Visions, Inc., Defendants.**

**Case No. 08–21449–CIV.**

United States District Court, S.D. Florida.

Dec. 9, 2008.

---

Restoration Network," which is identified as being "dedicated to providing information to the consumer public about the hair restoration and transplant industry," and that such website is controlled by Defendant Hennessey. (*Id.* ¶ 21.) According to the Complaint, Defendants have engaged in false, deceptive and unfair business practices in knowingly posting disparaging and false statements about Dr. Armani and Armani Medical on the website and by creating the impression that posters on the website are bona fide disgruntled patients of Plaintiffs, when in fact the posters are either fictitious persons or undisclosed affiliates of doctors who are on the website's recommended list of "pre-screened" doctors. (*Id.* ¶ 30.) The Complaint also asserts that as a result of such posts, many individuals have decided not to use the services of Plaintiffs. (*Id.* ¶¶ 71–72.) Based on these and additional allegations in the Complaint, Plaintiffs assert claims for Deceptive and Unfair Trade Practices ("FDUTPA") (Count I); Defamation (Count II); and for Temporary and Permanent Injunctive Relief (Count V).[1]

## II. Defendants' Motion to Dismiss

In their Motion, Defendants first argue that the Court must treat Plaintiffs' claims under FDUTPA and for defamation as a single claim because both claims arise out of the same set of operative facts. (D.E. 21 at 2–4.) Next, Defendants argue that Plaintiffs have failed to comply with Section 770.01 of the Florida Statutes because Plaintiffs have not alleged that they provided the requisite five days' notice before commencing their defamation claim against Defendants, nor can they comply

with such prerequisite, as they failed to provide timely notice under the statute. (*Id.* at 5–7.) Next, Defendants argue that, in any event, Plaintiffs have failed to identify the allegedly defamatory statements with sufficient specificity in order to state claim. (*Id.* at 7–9.) Additionally, Defendants argue that Media Visions is immune under the Communications Decency Act ("CDA") because the alleged defamatory statements were made by third parties. (*Id.* at 9–10.) Defendants also argue that Media Vision's forums are not "trade or commerce" under FDUTPA, and thus Count I of the Complaint must be dismissed. (*Id.* at 11–12.) Finally, Defendants argue that Count V seeks an impermissible prior restraint on speech and should be dismissed as inconsistent with the First Amendment to the United States Constitution. (*Id.* at 16–17.)

In their Response, Plaintiffs argue that Plaintiffs have alleged an independent basis for their FDUTPA claim, namely, Defendants' deceptive and misleading conduct, separate and apart from defamatory statements. (D.E. 31 at 4–5.) Next, Plaintiffs argue that Section 770.01 of the Florida Statutes is not applicable to internet chat forums such as that at issue here. (*Id.* at 5–9.) In addition, Plaintiffs argue that they have adequately pled a defamation claim and have satisfied Federal Rule of Civil Procedure 8(a). (*Id.* at 9–10.) Plaintiffs further argue that Defendants are not entitled to immunity under the CDA, in part because Plaintiffs argue that Defendants have themselves issued false and misleading statements regarding Plaintiffs, and that FDUTPA applies to Defendants and their alleged conduct.

---

1. On September 17, 2008, Counts III and IV were dismissed without prejudice from the Complaint. (*See* D.E. 30; *see also* D.E. 32.)

(*Id.* at 10–16.) Finally, Plaintiffs argue that they have not yet moved for injunctive relief, and thus Defendants' First Amendment argument is inappropriately decided on the instant Motion. (*Id.* at 16–17.)

In their Reply, Defendants in large part reiterate the arguments set forth in their initial pleading. (*See* D.E. 35.)

### III. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b), a defendant may move for dismissal of a claim based on one or more of seven specific defenses, including failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss, the Court accepts the facts alleged in the Complaint as true, and construes all reasonable inferences therefrom in the light most favorable to Plaintiffs. *Bank v. Pitt*, 928 F.2d 1108, 1109 (11th Cir.1991). To survive a motion under Rule 12(b)(6), a claim need not contain detailed factual allegations, but must provide sufficient grounds to show more than a merely speculative entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231–32 (11th Cir.2000).

### IV. Analysis

### A. FDUTPA Claim (Count I)

■ Defendants first appear to argue that Plaintiffs' FDUTPA claim should be dismissed because it arises from the same operative facts as their defamation claim. Nonetheless, "the mere fact that conduct gives rise to more than one type of claim does not prevent it from being a[n] [F]DUTPA violation." *Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F.Supp.2d 1254, 1262–1263 (N.D.Fla. 2007) (noting that on summary judgment, statements that were found to be defamatory also constituted violations of FDUTPA, while recognizing that concurrent violations of both causes of action will not necessarily be found in every case) (citing *Urling v. Helms Exterminators*, 468 So.2d 451 (Fla. 1st Dist.Ct.App.1985)). Accordingly, the Court does not find dismissal of Plaintiffs' FDUTPA claim on this basis to be appropriate at this stage of the litigation.

Defendants' second argument with respect to Plaintiffs' FDUTPA claim is that it must be dismissed because Media Vision's forums are not "trade" or "commerce" under FDUTPA. Pursuant to FDUTPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of *any trade or commerce*" are unlawful. Fla. Stat. § 501.204(1) (2008) (emphasis added). "Trade or commerce," as used in the statute, is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated," and includes "the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity." Fla. Stat. § 501.203(8). As such language clearly indicates, the definition of "trade or commerce" is quite broad. Moreover, FDUTPA requires that its provisions "be construed liberally" to, *inter alia*, "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

■ Given these provisions of FDUTPA, and further accepting the facts alleged in the Complaint as true and construing all reasonable inferences therefrom in the light most favorable to Plaintiffs, the Court does not find it appropriate to dismiss, at this stage of the litigation, Plaintiffs' FDUTPA claim on the basis that Media Vision's forums do not involve "trade" or "commerce" as contemplated by FDUTPA. In the Complaint, Plaintiffs have alleged, *inter alia,* that Defendants, through their website, provide information to the consumer public about the hair restoration and transplant industry (*see, e.g.,* D.E. ¶¶ 21–25); that potential patients heavily rely upon information provided in the website (*id.* ¶¶ 27–29); that Defendant Hennessey receives a monthly fee from hair transplant doctors who are placed on a "recommended list" of doctors on the website (*id.* ¶ 34); that, as a result of pressure from Plaintiffs' competitors, Defendants knowingly posted and/or permitted to be posted disparaging and false statements about Plaintiffs and left them posted for extended periods of time, purposefully creating damage to Plaintiffs' reputation (*id.* ¶¶ 30, 35–36); that Defendants failed to verify the identity of certain posters on the website (*id.* ¶¶ 50–51, 57–61); and that Plaintiffs' business and professional reputation was damaged in that many individuals decided not to use Plaintiffs' services after viewing the subject website (*id.* ¶¶ 66–74). Based on these and additional allegations in the Complaint, the Court finds that Plaintiffs have adequately alleged that Defendants have engaged in "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices" through "providing ... [a] ... service," and that such allegations are sufficient to satisfy the "trade or commerce" language contained in FDUTPA and defeat dismissal. *See* Fla. Stat. §§ 501.203, 501.204.

Finally, Defendants argue that the CDA makes Media Visions immune from suit under FDUTPA to the extent that Plaintiffs' claim is premised on statements posted by users of Media Visions' forum, because Media Visions is a provider of an "interactive computer service" as contemplated by 47 U.S.C. § 230. (D.E. 21 at 9–10.) Pursuant to the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The purpose of the CDA is to establish "federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1321–1322 (11th Cir.2006) (citations omitted). Although the majority of federal circuits have held that such immunity is "broad," the statutory immunity provided for under the CDA "does not apply without limitation." *Id.* (citing 47 U.S.C. § 230(e)(1)).

■ Here, Plaintiffs do not dispute that Media Visions is an "interactive computer service" for purposes of the CDA; rather, they argue that Media Visions is not immunized under the CDA because Plaintiffs have alleged that Media Visions itself created tortious content. (*See* D.E. 31 at 10–13.) The Complaint alleges, *inter alia,* that Media Visions "creat[ed] the impression that the posters are bona fide disgruntled patients of Plaintiffs when in fact the posters are either fictitious persons (and are the alter egos of Defendants) or are undisclosed affiliates of doctors who are on the Website's 'recommended' list of 'pre-screened' doctors" (Complaint ¶ 30), and that, through its agents, Media Visions

"refused to comply with the standard industry practice of verifying the identity of posters who have been called into question" (*id.* ¶ 60); publicly stated that Dr. Armani is unethical and that Plaintiffs prioritize revenues over patient care (*id.* ¶ 61); and failed to disclose to the public their own sponsor relationship with Plaintiffs' competitors (*id.* ¶ 62), misleading the public (*id.* ¶ 65). Accepting these allegations as true and construing all reasonable inferences therefrom in the light most favorable to Plaintiffs, the Court concludes that, at least for purposes of this Motion, Plaintiffs' FDUTPA claim is not premised solely on "information provided by another information content provider," *i.e.*, statements posted by users of Media Visions' forum. *See* 47 U.S.C. § 230(c)(1). As such, Defendant Media Visions may not be entitled to immunity under the CDA, and dismissal of Plaintiffs' FDUTPA claim against Media Visions on this ground is therefore inappropriate. *See Whitney Info. Network, Inc. v. Xcentric Venture, LLC,* 199 Fed.Appx. 738, 744 (11th Cir. 2006) (where complaint contained allegations illustrating defendants' involvement in creating or developing the alleged defamatory content of consumer complaints posted on their website, district court erred in dismissing complaint).[2]

## B. Defamation Claim (Count II)

■ With respect to Plaintiffs' defamation claim, Defendants argue that such claim should be dismissed because Plaintiffs failed to comply with Section 770.01 of the Florida Statutes, which requires a plaintiff to serve written notice on a defendant specifying the alleged defamatory statements and the article or broadcast in which they were made at least five (5) days "[b]efore any civil action [of a libel or slander] is brought for publication or broadcast, in a newspaper, periodical, or *other medium.*" Fla. Stat. § 770.01 (2008) (emphasis added). Defendants contend that notice was required in this case because the "other medium" language used in Section 770.01 includes the internet and internet forums such as the website at issue in this case. Plaintiffs, however, argue that the "other medium" language employed in Section 770.01 was intended to include solely television and radio broadcasting stations, and thus no notice was required in this case.

Whether the internet is included as part of the "other medium" language used in Section 770.01 is an issue that has not been definitively resolved by the Supreme Court of Florida or by any court in this Circuit. Nonetheless, Defendants cite two Florida lower court cases which touch upon this issue, and which this Court finds to be persuasive. In *Canonico v. Calloway,* 35 Med. L. Rptr. 1549 (Fla.Cir.Ct. Feb. 22, 2007), the plaintiffs claimed that they were defamed by statements made "on television and/or the internet," which included a story that was posted on the defendants' internet website. *Id.* at 1550; *see also id.* at 1551. The court applied Section 770.01 and found that the plaintiffs did not comply with the five-day notice period therein; thus, the court concluded that it lacked subject matter jurisdiction on the plaintiffs' defamation claim. *See id.* at 1550–51. Further, in *Holt v. Tampa Bay Television, Inc.,* 34 Med. L. Rptr. 1540, 1542 (Fla.Cir. Ct. Mar. 17, 2005), *aff'd by* 976 So.2d 1106

2. The Court notes that Defendants have not argued that Hennessey is entitled to immunity under the CDA, although Plaintiffs have included an argument that Hennessey is not entitled to immunity under the CDA in their Response.

(Fla.2d. Dist.Ct.App.2007), another defamation case, the plaintiff asserted that Section 770.01 did not apply to stories published on the internet, and therefore, no notice of the alleged defamatory statements was required. The court, however, held that the phrase "other medium" in Section 770.01 includes the internet. *Id.* In reaching this conclusion, the court reasoned that it could find no legitimate justification for interpreting the broad term "other medium" to exclude the internet, which, as the court found, "has become a recognized medium for communication to the masses." *Id.*

In contrast to the cases cited by Defendants, all of the cases cited by Plaintiffs in support of their argument—with the exception of *Zelinka v. Americare Healthscan, Inc.,* 763 So.2d 1173 (Fla. 4th. Dist. Ct.App.2000)—pre-date, by at least a decade, the use of the internet by the general public, and do not directly address whether the internet is considered in the category of "other medium" as contemplated by Section 770.01. Moreover, with regard to the *Zelinka* case, Plaintiffs misrepresent the court's holding by stating that the *Zelinka* court declined to expand the "other medium" language used in Section 770 to the internet. (*See* D.E. 31 at 7.) Instead, the *Zelinka* court expressly stated that it "need not reach the issue of whether the internet is a 'medium' within the meaning of Section 770.01," and held only that the notice requirement in Section 770.01 could not be extended "to a private individual who merely posts a message on the [internet] board." *See Zelinka,* 763 So.2d at 1175. As Plaintiffs in this case are not suing a "private individual who merely posts a message on the board," *Zelinka* is inapposite here.

Rather, in this case, Plaintiffs have brought suit against a company that allegedly owns, hosts and publishes the offending website, which provides information to the consumer public, and against the principal owner of that website, who is alleged to control the website's operations. Moreover, the Complaint alleges that Defendants themselves had at least some part in making defamatory statements against Plaintiffs, by posting comments from fictitious persons and by "publicly stating that Dr. Armani is unethical and making other statements ... that Plaintiffs prioritize revenues over patient care." (*See, e.g.,* D.E. 1 ¶ 30, 61.) Under these circumstances, and applying the logic employed by more recent cases cited by Defendants, the Court finds that Plaintiffs were required to give Defendants notice of their defamation claim in accordance with Section 770.01. As Plaintiffs do not dispute that they did not provide Defendants with such notice, Count II of the Complaint must be dismissed.

## C. Temporary and Permanent Injunctive Relief (Count V)

Finally, Defendants seek dismissal of Count V of the Complaint on the basis that it seeks a impermissible prior restraint on speech. In Count V, Plaintiffs seek "a temporary and permanent injunction restraining Defendants from publishing any disparaging and false statements about Plaintiffs." (D.E. 1 ¶¶ 109–112 and "wherefore" clause.) In their Response, Plaintiffs represent that they are not seeking a "prior restraint" by prohibiting Defendants' future speech, and state that, in fact, they have not yet sought injunctive relief because "Defendants took down from the Website the disparaging and false statements about Plaintiffs." (*See* D.E. 31 at 16–17.) Although not entirely clear from the Complaint or Plaintiffs' Response, it appears that Plaintiffs concede

Defendants' argument that a defendant may not be enjoined from making defamatory statements due to First Amendment concerns, and this Court agrees. In any event, as discussed above, Plaintiffs' defamation claim has been dismissed, and thus Plaintiffs may not seek injunctive relief on that claim.

■ With regard to their FDUTPA claim, however, Plaintiffs argue that equitable injunctive relief is appropriate in cases involving FDUTPA claims. (*See id.*) Indeed, courts in this Circuit have held that "FDUTPA offers two types of remedies: equitable relief in the form or declaratory or injunctive relief pursuant to Fla. Stat. 501.211(1) or 'actual damages' pursuant to Fla. Stat. 501.211(2)." *See Eclipse Med. v. Am. Hydro–Surgical Instruments,* 262 F.Supp.2d 1334, 1357 (S.D.Fla.1999). Thus, to the extent Count V seeks declaratory or injunctive relief pursuant to FDUTPA, the Court does not find that dismissal of Count V is appropriate at this stage of the litigation.

**ORDERED AND ADJUDGED** that:

1. Defendants' Renewed Motion to Dismiss (D.E. 20; *see also* D.E. 21), filed on July 14, 2008, is **GRANTED in part and DENIED in part as stated in this Order.**

2. Plaintiffs' claim for defamation (Count II of the Complaint) is hereby **DISMISSED with prejudice.**

3. Within ten (10) days of. the date of this Order and to avoid confusion of this Court's docket, Plaintiffs shall file an Amended Complaint eliminating their claim for defamation in accordance with this Order, and eliminating the previously-dismissed claims for trade libel (Count III) and tortious interference (Count IV) in

accordance with the Court's September 17, 2008 Order dismissing those claims without prejudice.